**STONE v. CHRISTENSEN, Chief Registrar for the Draft at Monmouth, Or., et al.**

**No. 487.**

District Court, D. Oregon.

Dec. 23, 1940.

Andrew Hansen, of Portland, Or., for plaintiff.

Carl C. Donaugh, U. S. Atty., and C. Laird McKenna, Jr., Asst. U. S. Atty., both of Portland, Or., for defendants.

JAMES ALGER FEE, District Judge.

Harry W. Stone brings complaint against certain administrative and executive officers of the State of Oregon and the United States asking for a declaration that he is free of obligation to register under the terms of the Selective Training and Service Act of 1940,[1] and restraining any prosecution of Stone for failure to comply with the provision thereof requiring registration of "every male citizen * * * between the ages of twenty-one and thirty-six".

The grounds for such relief are that registration will subject Stone to military training and he will thereby be deprived of liberty and property without due process of law and that he will undergo involuntary servitude, in derogation of the Federal Constitution, and will suffer damage thereby.

The defendants challenge the complaint upon the grounds (1) that there are no facts stated upon which a claim can be founded for either declaration or injunction; (2) that there is no jurisdiction in this court (a) because no substantial federal question is involved, and (b) because there is no sufficient sum in controversy.

█ Public policy requires that no injunction be granted by a court to restrain prosecution of a single act denounced as criminal by law. The only exception to this rule permits restraint of the officers where irreparable damage will be done an existing property right.[2] No declaration can be issued unless there is a present controversy.[3] It seems impossible to discover a present conflict between the officials named and Stone, otherwise than a criminal prosecution. Under the act it was his duty to register, theirs to register him. If the law was invalid he had no duty nor did they. These considerations, however, may sound in the cause of action and not in jurisdiction. If so, the court as presently constituted should probably not consider the questions.[4]

If, however, no substantial federal question be presented, or if no sufficient monetary damage be alleged, the defect is fatal. A single judge must consider these factors.[5]

█ The allegations of the petition do not by inference suggest that plaintiff is threatened with service in the army or in any way, except as a result of registration. But he has not registered. If he had registered he would not be subjected to military law nor liable to courtmartial until after induction, which includes swearing allegiance.[6] Prior to that time

[1] 50 U.S.C.A. Appendix, §§ 301–318 inc.

[2] Cline v. Frink Dairy Co., 274 U.S. 445, 451, 452, 47 S.Ct. 681, 71 L.Ed. 1146.

[3] "Actual controversy" is required under the Federal Declaratory Judgment Statute. 28 U.S.C.A. § 400. In dealing with registration unconnected with other regulatory features it was held that a declaratory judgment as to these others could not be obtained. "It presents a variety of hypothetical controversies which may never become real." Electric Bond Co. v. Securities & Exchange Commission, 303 U.S. 419, 443, 58 S.Ct. 678, 687, 82 L.Ed. 936, 115 A.L.R. 105.

[4] 28 U.S.C.A. § 380a.

[5] Jameson & Co. v. Morgenthau, 307 U. S. 171, 59 S.Ct. 804, 83 L.Ed. 1189; Cooney v. Legg, D.C., 34 F.Supp. 531.

[6] "No person shall be tried by any military or naval court martial in any case arising under this Act unless such

he is still entitled to protection of any rights he may have by the civil tribunals. This circumstance differentiates the case from those arising under the Selective Service Act of 1917, 50 U.S.C.A. Appendix, § 201 et seq., where an eligible individual, whether registered or not, could be subjected to military law by the sending of an order for him to report.[7] No allegation of damage or unconstitutionality can therefore be properly based upon any fact except the liability to register. According to the express terms of the law under consideration, the clauses thereof are severable. The validity of no one provision depends upon another.[8]

Stone, ever since he became of a suitable age, has been by Federal law a member of the unorganized militia.[9] By a series of laws, the first of which was adopted soon after the organization of government under the federal Constitution, the liability of able-bodied citizens to military service and training under federal authority has been continuously declared.[10] Enrollment by officers of the militia and an annual muster, which may be characterized as registration, was provided by this first statute.[11] Although these provisions fell into desuetude because of the ingrained American habit of awakening to the danger of war only after engulfment in its maelstrom, the constitutionality of provisions thus early adopted and theoretically in force over one hundred years

cannot be questioned. Certain exemptions were provided by this series of statutes. But administrative procedure was generally required to establish nonliability. In the present act the requirements for registration are almost universal, but the exemption provisions are extremely liberal.[12] Only by registration could Stone have discovered whether he would be acceptable for service to the United States in any capacity. Therefore, until he registers he is threatened with nothing but a criminal prosecution.

By virtue of these various declarations during practically the entire period of national existence, all citizens have been, between certain ages, liable to enrollment under federal supervision in the militia. It is obvious that some type of registration and classification was contemplated. Exemption could only be given when this registration was first accomplished. These enactments based on the "militia" clause of the federal Constitution were of unquestioned constitutionality.

The Supreme Court of the United States declared the validity of the registration provisions of the act of 1917 in a series of cases.[13] These decisions dispose of the claim that there is here a substantial federal question,[14] if the situation is the same.[15]

■ The petition of Stone rings changes upon "peace time" conscription.

---

person has been actually inducted for the training and service prescribed * * *." 50 U.S.C.A.Appendix, § 311.

[7] Franke v. Murray, 8 Cir., 248 F. 865, L.R.A.1918E, 1015. See also Ex parte Dunn, D.C., 250 F. 871.

[8] Electric Bond & Share Co. v. Securities & Exchange Comm., supra.

[9] See generally "The Militia Clause of the Constitution", 54 Harvard Law Review 181–220; United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206.

[10] Act May 8, 1792, 1 Stat. 271; Act Jan. 21, 1903, 32 Stat. 775, 32 U.S.C.A. § 81a; 32 U.S.C.A. 31–33.

[11] "That each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia by the captain or commanding officer of the company * * *." 1 Stat. 271, Chap. XXXIII, Sec. 1.

It was the duty of certain commanders

"to make returns to the adjutant-general of the state, at least once in every year, of the militia * * *" and of the adjutant-general to "make a return of all the militia of the state to the commander-in-chief of the said state, and a duplicate of the same to the President of the United States." 1 Stat. 271, 273, 274, Chap. XXXIII, Sec. 10.

[12] 50 U.S.C.A. Appendix, § 305.

[13] Jones v. Perkins, 245 U.S. 390, 38 S.Ct. 166, 62 L.Ed. 358; Ruthenberg v. United States, 245 U.S. 480, 481, 38 S. Ct. 168, 62 L.Ed. 414. See Generally Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856.

[14] Jameson & Co. v. Morgenthau, 307 U.S. 171, 172, 59 S.Ct. 804, 83 L.Ed. 1189; California Water Service Co. v. Redding, 304 U.S. 252, 254, 255, 58 S.Ct. 865, 82 L.Ed. 1323.

[15] See Joint Note prepared by the Editors of Columbia Law Review, Yale Law Journal, and Harvard Law Review, Vol. XL Columbia Law Review 1375 (Dec. 1940).

The enactment of the Selective Service Act of 1917 was preceded by a declaration of war. But at the time of the passage thereof and for many months thereafter the United States was engaged in training the armies thus raised. There was little possibility of an attack upon the country or its forces until these had been transported outside the boundaries. In this present period, the wars undeclared under the law of nations, the disregard of international convention, the hostile concentrations cloaked by manifestos of pacific intention, the elimination of time and distance as ponderable factors, the lightning strokes of modern arms are actualities over which the words "at peace" cannot be permitted to tyrannize in making judgments. Although Congress did not declare war, the decisions under the Act of 1917 are squarely applicable in view of military necessity. Congress declared a national emergency,[16] ordered part of the organized militia, the National Guard, into service and the registration of a portion of the unorganized militia. "Emergency does not create power."[17] The decisions of the Supreme Court above cited cannot be justified solely then upon the basis that war existed. But facts which create emergencies lay foundation for the use of express powers, the exercise of which could not be otherwise justified. Congress, in possession of the facts and no less than the courts restrained by the obligation to support and maintain the federal Constitution,[18] passed the act requiring registration. In the light of all the circumstances in dealing with registration alone, "There is no occasion at this time to mark the limits of governmental power in the exaction of military service when the nation is at peace."[19] The situation of this country will be judged by the law of nations, but whether events prove we are at war, in a state of war, or clinging to an equivocal neutrality, a failure to register manpower of the country would be a failure to provide for "the common defense".[20]

Registration under the act was a duty properly imposed under the federal Constitution upon Stone. It seems no substantial federal question is therefore raised by the petition.[21] However, the Court is of opinion that there is no sufficient amount in controversy[22] and founds the decision squarely upon the proposition that no jurisdiction exists for that reason. The foregoing discussion is apposite also to this determination.

 Plaintiff grounds no damage upon the alleged compulsion to register alone. In view of the discussion above, there could be none. But Stone complains he will be prosecuted for failure to register, and the enforcement of the penal provisions will damage him in the sum of $20,000. If the act is invalid determination can be made in a criminal trial as well as in a civil. The prosecution in good faith of a criminal action by officials may be injury but it is not on that account compensable in damages nor to be enjoined. The reduction of the plaintiff's income for a year by $600 and his loss of consortium of his wife and children and the pleasures of his home life for a year to his damage in the sum of $3,000 under the compulsory service provisions of the Act cannot be considered in computing the jurisdictional amount. There is no way in which plaintiff under the law can at present be forced into service. If he register, his wife and children are probably sufficient guarantees of present exemption under the terms of the Act whereby thousands of citizens are presently classified.

Sufficient amount is not shown to be in controversy and the petition is dismissed for lack of jurisdiction.

---

[16] "The Congress hereby declares that it is imperative to increase and train the personnel of the armed forces of the United States." 50 U.S.C.A. Appendix, § 301(a).

[17] Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 425, 54 S.Ct. 231, 235, 78 L.Ed. 413, 88 A.L.R. 1481.

[18] Article VI, U.S.Const.

[19] See Hamilton v. Regents of University of California, 293 U.S. 245, 55 S.Ct. 197, 205, 79 L.Ed. 343.

[20] Preamble of U. S. Constitution.

[21] See Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 106, 53 S.Ct.

549, 77 L.Ed. 1062. "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject." California Water Service Co. v. City of Redding, supra, 304 U.S. page 255, 58 S.Ct. page 867, 82 L.Ed. 1323.

[22] McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183.