Warren E. TALCOTT, Jr., Appellant,

v.

George A. REED, Lt. Col., Inf., Commanding Officer, Los Angeles Recruiting Main Station, United States Army, Appellee.

Nos. 14218, 14208.

United States Court of Appeals, Ninth Circuit.

Oct. 23, 1954.

Fee, J., dissented.

STEPHENS, Circuit Judge.

We have before us, on a consolidated record and briefs, an appeal from each of two judgments which were rendered by different judges of the same district court.

The first judgment was in case number 14208, rendered on the 25th of September, 1953, by the Honorable Dave W. Ling and the second judgment was in case number 14218, rendered by the Honorable Harry C. Westover.

Each of the judgments constitutes a denial of a petition filed by appellant-petitioner Warren E. Talcott, Jr., by relation of his mother in which petitioner seeks the issuance of the writ of habeas corpus and through the writ his release from commanding officers of the Army of the United States.

Instead of the writ issuing in either case, show cause orders were issued and the hearings were on the show cause orders and the usual responsive pleadings, and the appeals are presented to us as though the writ had issued in each case and had been discharged.

Petitioner (born October 2, 1925) registered with a Los Angeles local board under the Selective Service System, now the Universal Military Training and Service Act, 62 Stat. 604, Title 50 U.S. C.A.Appendix § 451 et seq., and his file, upon its face, shows him as classified IV-F (unfit). Under date of January 31, 1950, he was sent the regular notice of the classification which informed him that he could appeal and could request a personal appearance within ten days. He made no response.

On April 7, 1952, the local board ordered petitioner to report for physical examination and after determining him to be acceptable, notified him of such action and, on October 7, 1952, classified him as I-A, and nine days later the board received a letter from petitioner objecting to the classification. The board reviewed the file but made no change as to petitioner's status, and sent the file to the appeal board which board did likewise. On November 25, 1952, petitioner was

J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Glendale, Cal., Arline Martin, Manley J. Bowler, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

**362**

ordered to report for induction. Several postponements of induction were made while investigations were had as to "hardship" which induction would cause, and he was inducted under date of August 21, 1953.

All of the factual matters just recited apply to each appeal as do the claims made for causes for issue of the writ. The only difference between the petitions is that the second petition sets out that after hearing on the first show cause order, petitioner first learned that the board did not consider the statements made by petitioner in his returned questionnaire as to his physical condition.

As we are following material events in the order of their happening as nearly as may well be done, we now proceed to consider petitioner's letter to the board protesting the classification of I–A. It is petitioner's contention that the letter constituted a request for a review by the local board, a request for a personal appearance, and in case of an adverse view, an appeal. It is agreed that the letter was all of these things except that respondent claims contrary to petitioner that it was not a request for, but was a waiver of, a personal appearance.

■ We have very carefully analyzed the letter in the light of the waiver issue and have concluded that it did not constitute a waiver of a personal hearing before the local board. Inasmuch as a personal hearing is a definite right given every registrant by the Congress, there is no question but that such right should not be construed as having been waived unless the facts leave no other reasonable conclusion open.[1]

■ The problem is presented to us with every facet exposed exactly as it was exposed to the local board and to the court who rendered the judgment. All of the evidence is in writing and neither the board nor the courts below had ever seen the registrant-petitioner before making their conclusions. In such cases it is often said that the reviewing court is in as favorable a position to adjudge the problem as were the triers of fact.

Still, this court does not sit as an original trier of fact and, we think, it takes an imponderable moiety more than an even balance to justify a reversal. We approach the problem with these principles in mind.

■ We quote, in full, the first paragraph of the letter:

"Members of the Board,

I wish this to serve as my notice of appeal from my classification into I–A. Since my appeal is based on circumstances extending over the last five years, I would have preferred to appear before you to relate these circumstances more fully. However, the distance and expense present difficulties. However, after reviewing this appeal, if you feel my appearance would offer a more complete hearing, I will be glad to appear in person."

The balance of the letter is mainly statements and arguments as to hardship which induction will cause.

Petitioner's letter to the board was not a complete abandonment or waiver of his right to a personal appearance. It is couched in polite deference to the board and appears to be carefully written so as to assure the members that he is not attempting to avoid discussing his situation face to face with them and that he values the right to do so.

Both the file and the letter show that petitioner had removed from Los Angeles to New York where he had entered into business, and it is patent that such fact would "present difficulties". Yet he does not give up his right to appear but says:

"However, after reviewing this appeal, if you feel my appearance would offer a more complete hearing I will be glad to appear in person."

1. Cox v. Wedemeyer, 9 Cir., 1951, 192 F. 2d 920; United States v. Brandt, D.C. S.D.Iowa, Cr. No. 1–227; June 2, 1952; United States v. Blaker, D.C.S.D.Ind., Cr. No. 9677, March 12, 1954.

Construed strictly, the last quoted sentence may be said to leave it up to the board as to whether his appearance would change the situation. Laying aside the question as to whether the board should or could assume to decide such a question, we think the quoted sentence, when read with the whole letter, cannot reasonably be construed to mean that he has abandoned his right. What it does mean is that he thinks if the board will review his file in connection with his letter, the members will be convinced that his claim is good and that a personal appearance with its expense and other untoward circumstances is not needed. If, after the board has given it this requested attention and remains unconvinced, he writes, "I will be glad to appear in person."

We think both the Board and the district court were in error in regarding petitioner's request as a waiver of a personal appearance. This conclusion requires that the petitioner be ordered released from the Army.

Without retreating from our foregoing viewpoint, we now proceed to discuss the case as though we had determined the issue of waiver against Talcott's contentions.

■■ As to hardship, we think the showing is not sufficient to require a reversal. A showing of hardship in some degree could be made as to every selectee. Army life removes the young man from regular pursuits. We think in a very extreme case only would a court be justified in reversing a board's order on this point. Petitioner's lot was a hard one but he had very considerable deferment owing to the situation at his home, especially on account of his wife's pregnancy. Some time after petitioner was ordered inducted but before induction, the wife conceived, and all of the requirements as to this fact in connection with deferment were furnished the board. However, notice thereof was not furnished the board until after the notice of induction had been mailed to petitioner, and § 1622.30(c)(2), regulations, provides that no registrant shall be placed in III–A because he has a child

not yet born, unless prior to the time the local board's notice to appear for induction had been mailed to the registrant he has filed a certificate of a physician stating that a child has been conceived.

■ Respondent-appellee also cites § 1625.2 of the Regulations which provides that a classification can not be reopened until and unless the local board first finds there has been a change in the registrant's status resulting from "circumstances over which the registrant has no control". Respondent then cites General Hershey's Operation Bulletin No. 57, issued to the local boards, in his brief as follows:

"* * * that pregnancy is a status over which the registrant does have control, and it is therefore not a claim which can be classified under 'hardship' such as sickness, death, or an extreme emergency beyond the registrant's control."

We think the contents of the bulletin are morally and legally wrong. It invades the most sacred precinct of family life at a time when there should be the most complete mutuality between the spouses and in the face of nature's most demanding and significant urge in nature's scheme for propagating the species. It obliquely charges the youth of the land with corrupting the family relation into a way of avoiding service for cowards.

The remaining contention of petitioner-appellant is that the original IV–F classification was void, and therefore he never occupied the status of a deferred registrant; that he was twenty-six years old before he was classified I–A; and that the law limited the liability for service to those under twenty-six years of age, Title 50 U.S.C.A.Appendix § 454(a), and only provided for liability for service beyond the twenty-sixth birthday and up to the thirty-fifth birthday to those registrants who had been deferred. § 456(h), Title 50 U.S.C.A.Appendix.

It is vital therefore to determine whether the IV–F classification on the

face of petitioner's file was, and is, void or whether it was, and is, valid.

It is at this point that the two petitions for the writ differ.

In the first petition it is alleged that the classification under which petitioner was inducted and because of which he is detained, is unsupported by any evidence.

In the second petition it is alleged that the board members never considered the statement in petitioner's file as to whether, in his opinion, he has any mental or physical disqualifications.

■ The contention cannot be sustained as to the first petition because there was some evidence on the face of petitioner's returned questionnaire upon which the board could reasonably have placed petitioner in the deferred class. To the printed question in the questionnaire as to whether, in his opinion, he had any mental or physical disqualification he answered, "No." He later added, "I was discharged from Naval Reserve Training Corps because of a punctured ear drum. Later examination showed no such condition." And again later he explained, "As stated in Series XV, I feel that the condition of my ear drum should be clearly established." It would, perhaps, have been advisable for the board to have complied with this suggestion, but that they did not do so does not vitiate the evidence tending to establish the punctured ear drum. The evidence constituted a basis-in-fact. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, and Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59.

■ Petitioner also claims that the members of the local board did not comply with the law which requires that board orders shall be signed by board members. We regard such requirement as directory and hold that omissions in this regard do not affect the validity of the orders. The petitioner's file was admitted in evidence without objection as such and the board's orders are recorded therein.

The Second Petition

■ It clearly appears that Judge Westover viewed the petition before him as raising no ground not raised and determined in the petition which had been adjudicated by Judge Ling and therefore he was under no duty of considering the points raised.

Unquestionably, if no new ground was presented by the second petition, he was legally right under Title 28 U.S.C. § 2244 and many decisions of this and of the United States Supreme Court.

Petitioner-appellant does not agree that there was no new ground stated in the second petition, but on the contrary calls attention to his allegation in his second petition that the board "never considered" petitioner's answer of "No" to the question in the questionnaire, "Do you have any physical or mental condition which, in your opinion, will disqualify you from service in the Armed Forces?" We think this allegation was very different from the relative allegation in the first petition which was that there was no evidence supporting the classification IV–F. It was of course the duty of the board to consider petitioner's answer along with his voluntary request as to the condition of his ear drum. Petitioner offered to prove by the board members themselves that they had never even seen the questionnaire and also offered to prove that petitioner only learned of that fact subsequent to the hearing on the first petition and that he had no way of knowing it prior thereto. The court refused to hear the proffer, holding it to be immaterial. The basis for this ruling appears to be that the I–A classification was entirely free from any dependence upon the validity of the IV–F classification. We have heretofore shown that the I–A classification was void because petitioner was over age when it was made, unless at the time he legally had the status of a deferred registrant. We hold the second petition did present "new ground". Whether a board member may be heard in derogation of the official board file or record of a registrant we do not decide. We hold that the court should have taken cognizance of the new ground and have considered it.

Both judgments must be and are reversed and are remanded for further proceedings in accord with this opinion.

Reversed and remanded.

JAMES ALGER FEE, Circuit Judge (dissenting).

Determinations of two able United States District Judges in two different civil cases are reversed and determinations of an administrative board are set aside by the opinion of this Court.

### I.

As to the first case, the question whether the original IV–F classification was improperly granted is immaterial. The statute provides "that persons who are or may be deferred under the provisions of this section shall remain liable for training and service" until 35 years of age. Besides, if it were material, a District Judge recited in relation, to the eardrum, "there was evidence" before the local board "to support its classification of petitioner as IV–F on January 23, 1950." Talcott accepted the benefits of this IV–F classification and did not appeal, and was thereby legally deferred under the provisions of the section until reclassified.

### II.

As to the second case, there was no "new ground" presented. The second trial judge refused to hear evidence that the board members had not considered the answer of petitioner, "I feel that the condition of my eardrum should be clearly established." If this is supposed to be competent because it calls the attention of the board to the invalidity of the IV–F classification as rendering invalid recall after deferment, the facts have already been ruled upon. The law was thus settled. If it is supposed to relate to a condition present at the time, the board actually ordered a physical examination, which was all that was necessary to determine the condition of an eardrum.

### III.

Two minor matters will be dealt with here.

(1) A letter by an intelligent and educated man on a vital occasion, which excuses a failure to come from New York to Los Angeles because of distance and expense, is a waiver of a right of personal appearance. An offer to appear personally, notwithstanding if the board "after reviewing this appeal" should "feel my appearance would offer a more complete hearing," can be a demand for a right only by sentimental rationalization.

(2) The attack on the Selective Service operation Bulletin is unjustifiable. The armed services are charged with the high duty of protection of our country. This case fully justifies the existence of this regulation. Immediately after Talcott was first classified I–A, treatments were given his wife in order that she might become pregnant. These efforts succeeded, but no notice was given the board until the order to report had issued. The board, however, delayed actual induction until considerable time after the birth of the child. It is only the use of pregnancy as an excuse for failure to serve which the regulation denounces. We should not re-enact "Tommy Atkins."

There is an indication that the set of the breeze is in this quarter, and perhaps sail should be trimmed to meet it. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152. The compass has now been boxed. Over-precaution in protection of civil rights by technicality in a field where these are presently not in danger may cause the wind of doctrine to shift in the courts to flagrant violation of personal and religious liberty in time of hysteria. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305. Cf. Estep v. United States, 327 U.S. 114, 139, 66 S.Ct. 423, 90 L.Ed. 567. Civil liberty should be especially protected in war (see discussion in United States v. Minoru Yasui, D.C.1942, 48 F.Supp. 40, Fee, J.; Cf. Ex parte

**366**

Mitsuye Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243), but there should be no weakening of the national defense in peace, Stone v. Christensen, D.C.1940, 36 F.Supp. 739, Fee, J.

Both decisions should be affirmed.