Robert Austin WRIGHT, Plaintiff,

v.

SELECTIVE SERVICE SYSTEM, LOCAL BOARD NO. 105, ST. LOUIS COUNTY, MINNESOTA; Colonel Robert P. Knight, as Director of Selective Service of the State of Minnesota; Selective Service System, Local Board No. 80, Wood County, Wisconsin; Colonel Bentley Courtenay, as Director of Selective Service of the State of Wisconsin; and Selective Service System Appeal Board for the State of Minnesota, Defendants.

No. 5–70 Civ. 58.

United States District Court,
D. Minnesota,
Fifth Division.
Oct. 5, 1970.

**510**

James J. Boyd and Jeffrey N. Brauwerman, St. Paul, Minn., for plaintiff.

Robert G. Renner, U. S. Atty. by Stephen G. Palmer, Asst. U. S. Atty., for defendant.

NEVILLE, District Judge.

Plaintiff seeks an injunction to prevent defendants from inducting him into the armed services. Defendants' principal contention is that under 50 U.S.C. App. § 460(b) (3) this court lacks jurisdiction, since by the terms of such statute:

"No judicial review shall be made of the classification or processing of any registrant by local boards [except as to] the question of the jurisdiction * * * only when there is no basis in fact for the classification assigned to such registrant."

The question for decision is whether this court has jurisdiction under Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653 (1970), and other similar cases, to enjoin an induction where the registrant's wife, as the facts later were established, became pregnant with a child (subsequently born) prior to the receipt by registrant of his induction notice. Plaintiff claims that he is and was entitled to a "fatherhood" deferment or a III–A classification.

The following is a summary of the registrant's efforts to obtain a III–A (fatherhood) deferment and forms the factual basis for what is contained in Count I of his complaint. On or about June 26, 1969, while registrant was classified I–A, his wife became pregnant.[1]

On July 10, 1969, Minnesota Local Board No. 105 mailed registrant an Order to Report for Induction, later postponed as to date for reporting.[2] On July 23,

---

1. The court must presume that the registrant's physician's estimate of the date of conception is accurate in the absence of contrary evidence in the file. Further, the child was born on March 30, 1970, and the normal nine month gestation period would relate back to somewhere between the dates of June 26 and June 30, 1969.

2. On July 28, 1969, registrant received a six month's Postponement of the July 10 Order to Report for Induction, which Postponement was extended for a second six months on January 8, 1970, on the

1969, a doctor's pregnancy test returned negative results. Registrant first became armed with proof of his wife's pregnancy when the couple received positive results in a second pregnancy test on September 5, 1969. On September 15, 1969, the Local Board received from registrant a completed questionnaire and accompanying physician's statement indicating the recently diagnosed pregnancy and the fact of the child's conception prior to the date of plaintiff's Induction Order.[3] Plaintiff further requested in effect a reopening of his case and a classification in the III–A (fatherhood) category. Reopening was denied on February 18, 1970. On March 30, 1970, registrant's wife gave birth to a daughter which date, relating back, would fix the date of conception circa June 30, 1969, ten or more days before the issuance of the Order for Induction. Again, communications and doctor's statements were sent to the Local Board requesting a reopening and classification as III–A. The Local Board denied this request on May 21, 1970. Registrant is currently under an Order of Transferred Man to Report for Induction on August 12, 1970, the enforcement of which has been stayed by this court's Temporary Restraining Order entered August 7, 1970, and extended by Order of court dated August 24, 1970, pending a decision of the present litigation.

The Selective Service Act authorizes the President to provide that fathers upon whom children are dependent be deferred from liability under the Act.[4]

The so-called "fatherhood" deferment is by regulation[5] made available to any registrant whose wife becomes pregnant prior to the time of the mailing of an Order to Report for Induction. Although this has been characterized as a mandatory classification, certain regulations designed to expedite Selective Service operations necessarily qualify one's "right" to this and other deferments. In other words, while a registrant may actually be of deferable status, he may find himself foreclosed from claiming the deferment if he fails to conform to administrative procedures so as to notify the Board of or assert his status.

Thus, the regulation providing for III–A "fatherhood" deferments must be read in *pari materia* with Selective Service regulations governing the reopening of a registrant's classification upon the occurrence of events which operate to make him eligible for a deferment. 32 C.F.R. § 1625.2 reads:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such a registrant an Order to Report for Induction (SSS

---

basis of the registrant's status as an apparently irreplaceable electronics teacher in Wisconsin Rapids, Wisconsin. The original order was ultimately replaced by an Order for Transferred Man to Report for Induction, granted on July 8, 1970.

3. While the Board did not receive notice that the registrant's physician estimated the date of conception as June 26, 1969, until July 13, 1970, statements filed September 15, 1969, and April 20, 1970, which indicated respectively the estimated and actual date of delivery can reasonably be considered notice that conception occurred nine months prior, or before the

mailing of the original Order to Report for Induction.

4. 50 App.U.S.C. § 456(h)(2) reads in pertinent part:
    "The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces (1) of any or all categories of persons in a status with respect to persons * * * dependent upon them for support which renders their deferment advisable."

5. 32 C.F.R. § 1622.30(c).

Form No. 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances *over which the registrant had no control.*" [Emphasis added]

The receipt by plaintiff registrant of Local Board No. 105's original Order to Report for Induction on July 10, 1969, had the effect of suspending the Board's authority to reopen his classification unless, on proper application for reopening, it could find that there was a change in his status as a result of circumstances over which he had no control subsequent to the mailing date.[6]

On September 15, 1969, more than two months after his receipt of the Order, but immediately upon diagnosis of his wife's pregnancy, plaintiff notified the Board of her condition by submission of a questionnaire (SSS Form No. 127) and accompanying physician's certificate.[7]

Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3) (Supp. IV, 1969), states that this court has jurisdiction to review classifications (except in criminal cases) only where there is no "basis in fact for the classification assigned to such registrant."

Despite the apparently unequivocal language of this section, the United States Supreme Court has fashioned what has been considered to be an exception to the wholesale preclusion of pre-induction judicial review. In Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Court held that § 10(b) (3) does not preclude pre-induction review of Local Board conduct alleged and found to be essentially lawless. Basing its decision upon a construction of the Selective Service Act as a whole rather than on an analysis of the constitutionality of § 10(b) (3) literally read, the Court stated that the statute did not preclude review where:

" * * * there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness." 393 U.S. at 238, 89 S.Ct. at 416

Justice Harlan, concurring, distinguished between Board conduct alleged merely to abuse discretion statutorily committed to the Boards,[8] on the one hand, and illegal construction of the statute or regulations governing the procedure of classification on the other.

---

6. A postponement, as distinguished from a Cancellation, in no way affects the applicability of the proviso to § 1625.2. See Davis v. United States, 410 F.2d 89, at 93 (8th Cir. 1969), in which cancellation of an Order to Report for Induction was held to render the proviso to § 1625.2 inapplicable, so that the registrant was allowed reopening for consideration of circumstances *not* beyond his control which might entitle him to reclassification into a deferable category.

7. Although the Selective Service apparently considers that such a questionnaire is an inadequate vehicle by which to request a reopening, an inartful notification may be considered effective request in circumstances such as those of this case. The court therefore characterizes this September 15 questionnaire as plaintiff's request for reopening. Vaccarino v. Officer of the Day, 305 F.Supp. 732 (S.D.N.Y. 1969). *Cf.* Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Vaughn v. United States, 404 F.2d 586, 591 (8th Cir. 1968); Howze v. United States, 409 F.2d 27 (9th Cir. 1969).

8. *E. g.*, Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), finding that § 10(b) (3) precludes pre-induction review of the denial of conscientious objector status based upon "a determination of fact and an exercise of judgment" concededly within the Board's statutory authority. See also Drake v. Selective Service, D.Minn. (4–70 Civ. 196 filed July 6, 1970).

The Supreme Court spoke again in Breen v. Selective Service Board, 396 U. S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), extending the *Oestereich* exception to cases in which an unlawful construction or application of Selective Service regulations operates to deprive the registrant of an exemption or deferment mandated by regulation. Justice Harlan's concurring opinion makes the following observation:

> "The Court's opinion here, as in Oestereich v. Selective Service Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), appears to make the availability of pre-induction review turn on the lawfulness of the draft board's action or to put it another way, on the certainty with which the reviewing court can determine that the registrant would prevail on the merits if there was such a judicial review of his classification. On the other hand, under the test put forward in my separate opinion in *Oestereich*, 393 U.S., at 239–245, 89 S.Ct. 414, 420–421, the availability of pre-induction review turns not on what amounts to an advance decision on the merits, but rather on the nature of the challenge being made." 396 U.S. at 468, 90 S. Ct. at 666

Recent lower court decisions suggest that the *Oestereich* exception is applicable to the case at bar. In Shea v. Mitchell, 137 U.S.App.D.C. 227, 421 F.2d 1162 (1970), for example, the D.C. Circuit Court of Appeals held that a father entitled to a III–A (fatherhood) deferment under presidential regulations issued pursuant to statutory authorization could challenge his Local Board's denial of III–A status based upon regulations alleged to conflict with the statute and regulations. "Pre-induction review will always lie \* \* \* where facts are uncontested, no discretion is involved, and the applicable 'law' is clear." 137 U.S. App.D.C. at 231, 421 F.2d at 1165. Likewise in Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969), the court held that the *Oestereich* exception applied where "the parties \* \* \* have agreed on

the controlling facts, and only a question of statutory construction is here before us." 409 F.2d at 829. See also Bucher v. Selective Service System, 421 F.2d 24 (3d Cir. 1970); Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969); Edwards v. Local Board No. 58, 313 F.Supp. 650 (E.D.Pa.1970); Gregory v. Hershey, 311 F.Supp. 1 (E.D.Mich.1969).

The applicability of § 10(b) (3), it would seem, depends ultimately upon this court's analysis of the nature of the claim. Here, the registrant contends in substance that the denial of a III–A classification despite his showing ultimately and as soon as humanly possible that conception occurred prior to mailing of the Order for Induction was purely a legal error, an erroneous interpretation of § 1625.2. The infirmity of which he complains is not that the Board failed to find, as a matter of fact, that he was an expectant father prior to the mailing of the Order, but rather that the Board illegally construed § 1625.2 to deny him a reopening for classification as a III–A even if he was. Had he been able to establish the fact of pregnancy ten days before the issuance of his order for induction there would have been no discretion left with the Local Board and it would have been required to grant a III–A classification under the applicable rules and regulations. This issue must be characterized as one of law: § 1625.2 is not consistent with statutes and regulations when its proviso requiring "circumstances over which the registrant had no control" is read to bar III–A classification where a pre-Induction Order pregnancy is not discovered until after the Order has been mailed.

█ On this basis, the court finds that § 10(b) (3) does not preclude pre-induction judicial review of the propriety of the Board's reading of § 1625.2.

While § 1625.2 has been the subject of considerable litigation in conscientious objector cases of the so-called "late crystallization" variety, it has undergone little scrutiny in other contexts. See however, Shook v. Allen, 307 F.Supp. 357 (N.D.Ohio 1969).

**514**

A conception occurring prior to the mailing of an Order to Report for Induction which cannot be and is not discovered until after the mailing is nevertheless grounds for classification as III–A. 32 C.F.R. § 1625.2 should be construed to encompass the discovery of a pregnancy which predated the mailing of the Order as clearly "a change in the registrant's status resulting from circumstances over which the registrant had no control." [9]

A case nearly identical to the one at bar is United States ex rel. Kellogg v. McBee, 69 Crim. 1289, N.D.Ill. July 18, 1968, reported in 2 S.S.L.R. 3253. In that case, a father petitioned for a writ of habeas corpus alleging that his induction was unlawful because his Local Board failed to reopen under 32 C.F.R. § 1625.2 when presented with evidence of a pre-induction order conception not discovered by the registrant until after mailing of the Order.

"The respondent contends that this matter should be dismissed because the petitioner did not inform his local board of his wife's pregnancy *before* the induction order was mailed on January 14, 1969, as required by 32 C.F.R. § 1622.30(c) (3). A married person with a pregnant wife is generally entitled to be classified III–A by reason of this provision. However, this court is faced with the question

whether the petitioner waived or forfeited his eligibility for a III–A classification by his failure to notify his local board of his wife's pregnancy. The only decisional authority on this point indicated that fatherhood entitles a registrant to a III–A deferment whether or not he notifies the local board prior to the receipt of his induction order *if* such notification is given to the local board *prior to the date of induction.* Talcott v. Reed, 217 F.2d 360 (9th Cir. 1954) ; United States v. Bruinier, [1 SSLR 3333] 293 F.Supp. 666 (D.Ore.1968). Here, the petitioner notified his local board immediately upon learning of his wife's pregnancy, approximately one month after the induction order issued but four months before the date of his induction. Furthermore, the medical affidavit indicates that he did not have any knowledge of his pre-existing eligibility for a III–A classification until *after* the induction order was mailed. This court therefore finds that the petitioner did not forfeit his right to have his case reopened for consideration of his III–A claim.

It is undisputed that the facts pertaining to the petitioner's claim for a fatherhood or dependency deferment were not considered when his local board classified him I–A. Upon the petitioner's presentation of new facts

---

9. It is generally true, on the other hand, that the tardy (i. e., post-Induction Order) discovery that the draft law provides a deferment for a status which existed and was or should have been perceived prior to the mailing date is not a "change in circumstances beyond the registrant's control." See Dugdale v. United States, 389 F.2d 482 (9th Cir. 1968).

Thus, a registrant who knew or should have known of his wife's pregnancy before the mailing of the Order is not entitled to a post-Order reopening on the basis of his tardy discovery that his status entitled him to a deferment. United States v. Lemmon, 313 F.Supp. 737 (D.Md.1970), and cases cited therein. This was apparently the rationale for denial of a III-A (fatherhood) classification in the case of United States v. Hulphers, 421

F.2d 1291 (9th Cir. 1969). There, the registrant requesting a reopening after the mailing of an Induction Order on the basis of a pre-mailing date conception failed to establish that the reason his request was tardy was that pregnancy was not capable of diagnosis until after the Order was mailed. In other words, his request did not indicate that late discovery was not his fault.

In the case at bar, however, the registrant's Selective Service file contains a physician's letter disclosing in effect that the pregnancy could not have been discovered until after the mailing date. Tardy notification of the pre-Induction Order conception cannot be attributed to laziness or bad faith on the part of the registrant.

indicating a change in his circumstances beyond his control, the local board was obligated to reopen and reconsider his classification. 32 C.F.R. § 1625.2; Robertson v. United States, [1 SSLR 3281] 404 F.2d 1141 (5th Cir. 1968); Vaughn v. United States, [1 SSLR 3277] 404 F.2d 586 (8th Cir. 1968); United States v. Hinch, [1 SSLR 3274] 292 F.Supp. 696 (W.D. Mo.1968). The local board's failure to reopen and reconsider the petitioner's classification deprived him of a personal appearance, valuable appeal rights, and of due process. United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); Vaughn v. United States, *supra.*"

It is clear to this court from the cases and regulations that where conception *occurred prior to receipt of the July 10, 1969 Order to Report for Induction,* the subsequent discovery of the pregnancy of this registrant's wife must be considered a change in circumstances over which the registrant had no control. The registrant's file shows that a pregnancy test on July 23, 1969 bore negative results, which clearly indicates that the registrant could not have discovered the change in circumstances prior to receipt of his Order to Report for Induction. It was not until September 11, 1969 that confirmation of pregnancy was made by the doctor. The registrant notified the Local Board by letter and questionnaire immediately.

On the basis of the above, the court finds (1) that the registrant could not possibly have known nor discovered his newly-acquired deferable status at any time between conception (the point at which his wife's pregnancy became inarguably out of his control) and mailing of the Order, (2) that he notified the Board with what was in effect a request for reopening seasonably upon discovery of that status, and (3) that the Board

should at that point have considered this a circumstance beyond plaintiff's control, reopened his case and classified him III–A (fatherhood).[10]

In light of the foregoing, the court finds it unnecessary to reach the issues raised in Count II of the Complaint. The resolution as above of the issue raised in Count I of plaintiff's complaint would appear to dispose of this case on the merits without the necessity of a further trial or hearing particularly since the Selective Service file reveals plaintiff was born May 9, 1944 and thus is now 26 years of age.

A separate order has been entered.

---

10. The court does not reach the question of whether conception in the first instance is a "circumstance over which the registrant has no control." In other words, the ruling in this case does not permit III–A classification on the basis of a post-mailing date conception. See Talcott v. Reed, 217 F.2d 360 (9th Cir. 1954); United States v. Bruinier, 293 F.Supp. 666 (D.Ore.1968).