**Joel Robert SHOOK, Petitioner,**

v.

**Colonel Arthur ALLEN and Stanley R. Resor, Secretary of Army, Respondents.**

**No. C 69–618.**

United States District Court
N. D. Ohio, E. D.

Oct. 7, 1969.

358

Ralph Rudd, Rudd, Miller, Sheerer & Lybarger, Cleveland, Ohio, for petitioner.

Timothy J. Potts, Asst. U. S. Atty., Cleveland, Ohio, for respondents.

## MEMORANDUM OPINION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW JUDGMENT AND FINAL ORDER

LAMBROS, District Judge.

On August 11, 1969, the petitioner, Joel Robert Shook, filed a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241 *et seq.* On the same day, this Court issued an order to show cause to the respondents, Colonel Arthur Allen and Stanley R. Resor. A hearing on this order was held on September 4, 1969. After considering the petitioner's selective service file, this Court makes the following findings of fact and law:

The petitioner first registered with his Local Board No. 236, (hereinafter

the "Board" or the "Local Board") a short time after his eighteenth birthday. At that time, petitioner was attending Oberlin College. While the petitioner attended Oberlin College, he annually received a II-S deferment (a student deferment) until his graduation in June of 1968. Thereafter, the petitioner was classified I-A on August 30, 1968. The petitioner did not appeal this classification. In the early part of September, 1968, the petitioner entered the Princeton University Graduate School. During the academic year, the petitioner was ordered to report for a pre-induction physical. The examination was transferred to Trenton, New Jersey and was held around March 3, 1969. On March 25, 1969, the Board mailed to the petitioner at his New Jersey address a statement of acceptability, that is, the petitioner was found fully acceptable for induction into the armed forces. Three days later—March 28, 1969—the Board mailed to the petitioner an order to report for induction. In this order, he was told to report to the induction center on April 23, 1969. Since the petitioner was in Cleveland during his spring vacation, he did not have actual notice of this order until April 2, 1969, when he returned to Princeton University.

Upon a request by the petitioner in a letter dated April 7, 1969, the Board, pursuant to 32 C.F.R. § 1632.2, postponed his induction until after June 10 in order to allow him to complete the academic year.

The issues in this case are an outgrowth of the petitioner's spring vacation in Cleveland. On March 26, 1969, the petitioner made application to the Cleveland Board of Education for its junior high school mathematics teacher training program. This program was designed to recruit qualified persons who would fill the void in the number of secondary level math teachers. The program consists of several parts. At first the participant attends a seven-week summer training course. During the summer he receives practical teaching experience. He also participates in discussions and hears lectures with respect to problems in education. Upon completion of the summer program, the participant is assigned a full time teaching load under the supervision of an experienced teacher. In addition to classroom responsibilities, the participant takes graduate school courses at Cleveland State University. After three years of study, the participant can be awarded a masters degree in education. Within a one year period, he can also be certificated to teach by the Ohio State Board of Education. The Cleveland Public Schools (hereinafter the "School System") accepted the petitioner into this program around April 29, 1969.

Thereafter, the petitioner and Mr. Jack Belcher, Assistant Supervisor of the Division of Personnel of the School System, respectively requested that the Local Board grant the petitioner an occupational deferment. (See letters dated April 29, 1969, and May 7, 1969.) On June 18, 1969, the Local Board advised Mr. Belcher that the Board had received his request. The Board, however, noted that Mr. Belcher's letter was received subsequent to the petitioner's order to report for induction. The Board concluded by saying that it did not recommend delaying any further petitioner's induction. The petitioner was ordered to report for induction July 9, 1969. He and Mr. Belcher were so advised.

The petitioner and Mr. Belcher each petitioned the Ohio State Headquarters of the Selective Service System in essence to review the Local Board's action. The Ohio Selective Service Headquarters granted the request, reviewed the petitioner's file, and then returned the file to the Local Board. In the meantime, the petitioner's induction was postponed in order for the Local Board to review the record again.

The School System further supplied information with respect to the petitioner's case in letters dated July 3 and July 9. In these letters, the School System noted that the petitioner had signed a three year commitment to teach in an inner city Cleveland junior high school.

It was noted that "his teaching certificate, without which we could not employ him, is being processed by the State Department of Education. * * * On their assurance that he will be certificated, we have issued him a contract." A commitment of employment form, dated June 25, 1969, was attached to one of these letters. (The petitioner also forwarded a copy of this agreement to the Board on August 5, 1969).

On July 12, 1969, the petitioner requested that the Board reopen his classification and classify him anew. The petitioner alleged that there was information in his file which was not considered previously and which, if true, would justify a change in classification. He claimed that the change in his status was beyond his control. He also enumerated the events of his spring vacation which led to his application to the teaching training program. In conclusion he requested a II-A classification or occupational deferment.

On July 23, 1969, the Local Board notified the petitioner and the School System the results of its review. The Board advised them that the occupational deferment was reviewed, considered, and denied. The Board also noted that the additional information did not warrant the reopening of the petitioner's classification. The petitioner, on July 25, 1969, was ordered to report for induction August 11, 1969. On that day, the petitioner did submit to induction.

The petitioner contends that the Board should have reopened his classification. He alleges that there was no basis in fact for the Board's denial of his request for an occupational deferment. He further claims that he presented a prima facie case to the Board that he was entitled to a reopening of his classification. The petitioner alleges that the failure upon the Board's part to reopen his classification denied him due process of law. There was a denial of due process of law since the failure to reopen precluded the petitioner from the valuable rights of a personal appearance and of an appeal. See United States v. Freeman, 388 F.2d 246 (7th Cir. 1967). The Court finds that the petitioner's contention that the Board should have reopened his classification is well taken.

■ Before considering the petitioner's contention, a review of the law is in order. Under 50 U.S.C. App. § 460(b)(3), the decisions of the local boards are considered final. Thus, this section in pertinent part reads:

"No judicial review shall be made of the classification or processing of any registrant * * * except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to the local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 U.S.C. App. § 460(b)(3).

With respect to the classification of a registrant, the United States Supreme Court has interpreted this section to mean that "[t]he decisions of the local boards made in *conformity with the regulations* are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is *no basis in fact* for the classification which it gave the registrant." Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946). (Emphasis added.) Thus, a court can interfere with a classification in two circumstances, namely, when there was no basis in fact for such classification or when the local board acted arbitrarily and thus denied the registrant due process of law. Estep v. United States, *supra*; see Parrott v. United States, 370 F.2d 388, 392 (9th Cir. 1966), cert. denied, Lawrence v. United States, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967).

■ The scope of review in selective service cases is quite narrow. See United States v. Willard, 312 F.2d 605, 607 (6th Cir.), cert. denied, 372 U.S. 960, 83 S.Ct. 1014, 10 L.Ed.2d 13 (1963). It must be remembered that the court must confine its review to the evidence which the board acted upon, that is, the selective service file. Cox v. United States, 332 U.S. 442, 455, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States v. Mohammed, 288 F.2d 236 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26 (1961); United States v. Ruppell, 278 F.Supp. 287, 290 (E.D.N.Y.1968); see United States v. Longworth, 269 F.Supp. 971, 976 (S.D.Ohio 1967). Thus,

> "the Court is not permitted to create a new record by considering new or additional evidence and thus substitute its judgment for the decision of the Board. Otherwise the Congressional intent relating to the administration of the Selective Service System would be defeated." United States v. Ruppell, *supra*, 278 F.Supp. at 290.

In the present case, the petitioner seeks Court review of his Board's failure to reopen his classification. This failure to reopen occurred after his notice of induction was mailed to petitioner. The applicable regulations read as follows:

> "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, *which, if true, would justify a change in the registrant's classification* * * * *provided* * * * *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" 32 C.F.R. § 1625.2. (Emphasis added.)

> "When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required." 32 C.F.R. § 1625.4.

■ It must be emphasized that petitioner sought reopening *after* his notice of induction was mailed. Therefore, the proviso in the former regulation (32 C.F.R. § 1625.2) is applicable to the present case. In such a situation, what is a court's scope of review? The Court notes that in a case where a denial of a reopening occurs before a notice of induction is mailed, the scope of review is the determination of whether or not the registrant presented a prima facie case to the board in support of his reclassification and thus is entitled to a reopening. Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); United States v. Mohammed, *supra*; United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966). "A prima facie case is made out if a registrant has presented facts which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant granting his requested classification." United States v. Burlich, *supra,* at 911. The "prima facie" standard is equally applicable to a request for reopening *after* the issuance of an induction order. See Lane v. Allen, (Civil

No. 69–49) 2 SSLR 3129 (N.D.Ohio 1969); United States v. Federspiel, 1 SSLR 3042 (N.D.Ohio 1968). Therefore, in addition to presenting a prima facie case with respect to the requested classification, the registrant must present a prima facie case that the change of status was beyond his control. See Paszel v. Laird, 2 SSLR 3119 (E.D.N.Y. 1969); Lane v. Allen, *supra*. The Court believes that this two-pronged standard must be met in the following order:

First, the registrant must have presented to the board a prima facie case that the change of status was beyond his control. The Court feels that this test must be met first since the language of the regulation is couched in mandatory terms—that is, "*shall not* be reopened * * * unless the board *first specifically finds* there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2. (Emphasis added.) See Magaro v. Commanding Officer, 2 SSLR 3120 (W.D.Tex. 1969); United States v. Davis, 284 F. Supp. 93, 97 (S.D.Iowa 1968). The courts have noted the mandatory nature of the proviso in the regulation by stating that the board is "powerless" to reopen unless there are changed circumstances beyond the registrant's control. See DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968), aff'd, 393 U.S. 976, 89 S.Ct. 461, 21 L.Ed.2d 438 (1969); United States v. Tucker, 374 F.2d 731 (7th Cir. 1967). And, second, the registrant must have presented to the board a prima facie case with respect to facts "which if true, would justify a change in the registrant's classification."

In applying the foregoing principles of law to the case at hand, the Court finds that the petitioner made a prima facie case to his Board that the change of status was a result of circumstances beyond his control. He also made a prima facie case that he was entitled to a II–A or occupational deferment. His selective service file reflects no basis for a denial of a reopening. Thus, the Board was obligated to reopen his classification. Since the Board did not, the petitioner was denied due process of law in that the failure denied the petitioner the valuable rights of a personal appearance and of an appeal. See United States v. Freeman, 388 F.2d 246 (7th Cir. 1967).

■ The Court finds that the petitioner presented a prima facie case to his Board in the letters dated June 20, 1969 and July 12, 1969[1] that the change in his status from student to teacher was beyond his control. The prior letter was addressed to Colonel Richardson of the Ohio Selective Service Headquarters and was enclosed in the petitioner's file pursuant to his direction. The letter in pertinent part reads:

"Although I had received a notice of induction prior to this request [for an occupational deferment], I had fully completed the application procedure for this [teacher training] program before receiving an induction notice."

The later letter was addressed to the Local Board and in pertinent part reads:

"*On March 26, 1969,* while I was home on spring vacation, *I applied* to the Cleveland Board of Education for admission to its Junior High School Mathematics Teacher Training Program. I was interviewed on March 28. On March 31 and April 1 I spent two full days at Addison Junior High observing the mathematics classes, and on the afternoon of April 1, I was interviewed as to my reaction to that experience. On April 2, 1969, I returned to college, having done on or before April 1 everything I could do to be accepted in the Program, which included my application to Cleveland State University, my requests for former professors to write letters of recommendation, and sending for the transcript of my grades from Ober-

1. A request for a reopening of a classification must be in writing. 32 C.F.R. § 1625.2. The petitioner has complied with this requirement in the letter dated July 12, 1969.

lin. *Everything else that needed to be done to accomplish my change of status was to be done by others over whom I had no control.*

"My application was accepted by the Cleveland Board of Education and on April 29, 1969, Mr. Belcher wrote to you advising you of that fact.

"As you know from other communications in my file, the Program involves a commitment for me to teach for three years. I will teach full time, beginning in September, 1969. My training began on June 16. * * *" (Emphasis added.)

A fair reading of these letters imports that the petitioner applied for the training program and in turn, the ultimate teaching position, on March 26, two days *prior* to the issuance of his induction order. The application to this program was a commitment on the petitioner's part to begin the teacher training program and to accept the teaching position if and when he was accepted. In this regard, two of the admission requirements to the program were:

1. "Willingness to accept a probationary contract to teach in an inner city Cleveland public school."

2. "Agreement to complete the entire three year program."

It is noted that this commitment was made *prior* to the mailing of his induction order. Thereafter, any change in his status from student to teacher depended upon whether or not he was accepted into the training program. This acceptance, of course, was out of his hands. The ensuing acceptance by the School System obligated the petitioner to begin and to complete the training program. It further obligated him to accept a teaching position which he, in fact, did. Consequently, this Court finds that the petitioner presented a prima facie case that a change in his status from student to teacher was a result of circumstances beyond his control, namely, the acceptance by the School System of an application submitted *prior* to the issuance of his induction order.

The Court is not unmindful of the fact that a distinction is being made between an application submitted before and one submitted after an induction order is mailed. The Court believes that the proviso in the regulation was intended to cover situations wherein the registrant attempts to change his status only *after* the mailing of the notice of induction. "Otherwise, the whole machinery of the selective service process may conceivably be disrupted by *last minute changes* in status for purposes of avoidance." Keene v. United States, 266 F.2d 378, 384 (10th Cir. 1959). (Emphasis added.) An example of a last minute change in status for purpose of avoidance is the case of Ex parte Hannig, 106 F.Supp. 715 (N.D.Cal.1952). There, the petitioner enlisted in an Army Reserve Unit after receiving his notice of induction. The court held that the enlistment was within his control. In the cited case, it is obvious that the induction order precipitated the petitioner's enlistment. It was a clear case to create a change of status in order to avoid the induction order. The case at bar presents a different situation. The induction order did not precipitate the petitioner's application to the School System. Rather, the petitioner applied prior to the mailing of the induction order. Since the petitioner did not have actual notice of his induction order, it cannot be said that he applied to avoid the consequences of his induction order.

In addition, the Court finds that the petitioner did present a prima facie case to his Board that he was entitled to an occupational deferment. There are two regulations which enumerate the requisite conditions for an occupational deferment. One regulation provides that "[i]n Class II-A shall be placed any registrant whose * * * occupation * * * *is found* to be necessary to the maintenance of the national health, safety, or interest." 32 C.F.R. § 1622.22(a). (Emphasis added.) In order for one's occupation to be even considered, let alone found to be necessary for the nation's welfare, the registrant must first

satisfy the conditions of another regulation. This regulation provides that:

"a registrant's employment in industry or other occupation, service in office, or activity in research, or medical, scientific, or other endeavors, *shall be considered* to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

(1) The registrant is, or but for a seasonal or temporary interruption would be engaged, in such activity.

(2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.

(3) The removal of the registrant would cause a material loss of effectiveness in such activity." 32 C.F.R. § 1622.23(a). (Emphasis added.)

Therefore,

"[e]ligibility for the II–A classification requires * * * not only that the essential character of the occupation be such as to make it 'necessary to the maintenance of the national health, safety, or interest,' but also that the three enumerated conditions, relating to the employment of the specific registrant, be present." Petrie v. United States, 407 F.2d 267, 275 (9th Cir. 1969).

In the case at bar, the petitioner did sustain his burden of proof before the Board with respect to all four conditions.

The file does contain uncontradicted facts which establish that the petitioner, but for a seasonal or temporary interruption, would be engaged in teaching mathematics. The interruption, of course, was the closing of the schools for summer vacation. The petitioner would be engaged in teaching mathematics, since he signed a commitment to teach, effective August 25, 1969.

The petitioner, furthermore, presented a prima facie case that he could not be replaced due to a shortage of persons with his qualifications or skill. The file does reflect that the petitioner had ample qualifications for teaching. The petitioner was a graduate of a highly respected college. The petitioner had attended the Princeton University Graduate School taking courses in the doctoral program. He would not have been accepted into the Graduate School unless he had a good academic record. (See the letter from the Princeton University Graduate School dated April 3, 1969.) Since entering high school, the petitioner evidenced an interest in teaching albeit this interest was in a higher level of teaching than secondary education. The petitioner had the necessary preparation to teach his subject—*i. e.* mathematics. According to the brochure which describes the teacher training program, an applicant for the program must have a "[b]asic background in mathematics. * * *" The petitioner must have had this necessary background in mathematics, otherwise he would not have been accepted into the above program. In addition, at the time he requested a reopening of his classification, the petitioner was learning teaching skills in the training program. His progress in the program must have been satisfactory for the Ohio State Department of Education intended to certificate him. Certification, of course, means that the person certificated has met the requisite state imposed standards and qualifications for teaching. Thus, in a letter dated July 9, 1969, the School System notified the Board that the petitioner would receive such certification. The pertinent portion of the letter states that:

"* * * [the petitioner's] teacher certificate, without which we could not employ him, is being processed by the State Department of Education in Columbus, Ohio. On *their assurance* he *will be certificated*, we have issued him a contract." (Emphasis added.)

The letter clearly shows that both the School System and the Ohio State Department of Education felt that the petitioner would have the qualifications to teach.

Furthermore, there was a shortage of teachers in the area in which the petition-

er was to be assigned—*i. e.* mathematics. Thus, in a letter dated April 29, the School System stated that "[d]ue to the *extreme shortage* of teachers, especially in the fields of Mathematics and Science Education, we have received federal funds to train approximately ninety teachers in these *critical areas.*" (Emphasis added.) The petitioner also referred to this shortage of math teachers in a letter dated July 12, 1969. The shortage of math teachers in conjunction with the math teacher training program suggest that the petitioner was irreplaceable. The Board had information to the effect that the petitioner was one out of ninety persons who were selected for a teacher training program in the areas of mathematics and science. Upon completion of the training program, the petitioner would fill a position in an area where there was a shortage of teachers. Once the training program commenced, new trainees could not be added since the program required seven complete weeks of training. The brochure describing the training program supports this. At the time the petitioner requested a reopening of his classification on July 12, 1969, the program had begun and thus, new trainees could not be added. Since a new trainee could not replace the petitioner, the program would be short one person. In turn, the teaching position for which the petitioner was channeled would not be filled. Thus, he was obviously irreplaceable. The School System seemed to believe so. In a letter dated June 25 and addressed to the Colonel Richardson of the Ohio Selective Service Headquarters, the School System requested an occupational deferment "since we have already invested time and money in preparing him for our fall school year."

The petitioner also presented a prima facie case that his removal would cause a material loss of effectiveness in the math program of the School System. In this regard, the Court again notes that there is a continual reference to the shortage of math teachers in the petitioner's file. The petitioner was one of ninety persons hired to alleviate this situation, particularly in regard to the inner city schools. There was such a great need for math teachers that the "Board of Education * * * [had] gone to great length to attract, recruit, and gain commitments to the * * * [math teacher training program]." (See letter dated July 12, 1969). Thus one can infer from these factors that a prima facie case was made that the removal of the petitioner from his teaching position would cause a material loss in the effectiveness of the math program in the School System, especially in view of the existing shortage of math teachers.

Since the petitioner presented a prima facie case to the Board with respect to the three conditions of 32 C.F.R. § 1622.-23(a), the Court now turns to examine whether the petitioner did the same with respect to 32 C.F.R. § §1622.22(a)—*i. e.* whether his occupation as a teacher was necessary to the maintenance of the national health, safety, or interest.

██ The Court finds that the petitioner did present such a case to his Board. As noted above, the School System advised the Board that the federal government was providing funds for the training of math and science teachers. In a letter dated May 7, 1969, the petitioner noted that the teacher training program had federal support. The commitment of federal funds to the training of math and science teachers, at the least, reflects a national interest in the fields of math and science education. Since the petitioner's occupation was within the scope of this national interest, a prima facie case was made that his teaching position was necessary to the maintenance of a national interest, namely, the area of math education. The Court further notes that there is a definite national interest in the education of our youth. A country such as ours can not grow and prosper without the education of its young citizens. Teachers play important and crucial roles in this educational process. Furthermore, there is a great need in our present society for teachers to fill positions in our inner

city schools. The petitioner is satisfying this pressing need. This Court finds that a teacher in the petitioner's position is essential to the national welfare.

After an examination of the petitioner's selective service file and in light of the foregoing facts with respect to the petitioner's prima facie case for an occupational deferment, the Court further finds that there is no basis in fact for the Board's denial of said deferment.

In summary, the Court finds that the petitioner presented sufficient facts to his Board that the Board should have reopened his classification. The file reflects that there is no basis in fact for the Board's denial of the occupational deferment. The file reflects that the petitioner presented a prima facie case to the Board that the change in his status from student to teacher was beyond his control, namely, the acceptance of his application by the School System. The record also supports a prima facie case that the petitioner was entitled to an occupational deferment. The petitioner's selective service file demonstrates that the petitioner would be engaged in teaching but for the summer recess. It reflects that the petitioner had ample qualifications to teach. It supports the fact that the petitioner was irreplaceable. The file reflects that the petitioner's removal would cause a material loss in the effectiveness of the math program in the School System. It further reflects that the petitioner's occupation was necessary to the maintenance of a national interest. Therefore, the Court must find that the Board was obligated to reopen the petitioner's classification. The Court has searched the petitioner's selective service file and has been unable to find a reason for the Board's action. The Court is cognizant of the fact that the Board need not provide a reason for its action in such a case. See 32 C.F.R. § 1625.4. Nonetheless, a court's function in a selective service case would be assisted if the local board stated definitive reasons for its action. In the case at bar, this Court did not have the benefit of the Board's reasoning. After giving every favorable inference to the Board's action, the Court finds that the Board acted erroneously in the petitioner's case.

Inasmuch as the petitioner presented a prima facie case to the Board that the change in his status from student to teacher was beyond his control and that he was entitled to an occupational deferment, the Board should have reopened his classification. Since it did not, the Board denied the petitioner due process of law. See United States v. Freeman, 388 F.2d 246 (7th Cir. 1967). Hence, the Court finds that the petitioner was inducted into the United States Army in violation of his constitutional rights to due process of law. Consequently, this Court grants the petitioner's request for a writ of habeas corpus.

The Court, therefore, orders that the petitioner be released from the custody of the United States Army. The Court notes, however, that this order is not intended to prejudice any further action upon the part of the Local Board with respect to the classification of the petitioner.

It is so ordered.