Breitenstein, Senior Circuit Judge, dissented and filed opinion.

**UNITED STATES of America,
Appellee,**

v.

**Warren Scott BALDRIDGE, Defendant-Appellant.**

**No. 71–1210.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1971.

Decided Jan. 28, 1972.

Harvey A. Silverglate, Boston, Mass., with whom Daniel Klubock and Zalkind, Klubock & Silverglate, Boston, Mass., were on brief, for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, BREITENSTEIN,* Senior Circuit Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

Appellant Warren Scott Baldridge was convicted in a jury-waived trial of refusing to submit to induction in violation of 50 U.S.C. App. § 462(a). On appeal, he urges primarily that his local board, in refusing to reopen his I–A classification to consider his request to be placed in Class II–A as a Peace Corps volunteer, violated the mandate of 32 C.F.R. § 1625.2, which was construed to be binding on local boards in Mulloy v. United States, 398 U.S. 410, 414–16, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). The government does not contest that Baldridge fulfilled the basic requirement for a reopening by presenting new facts, "which, if true, would justify a change in [his] classification" to Class II–A, but takes the position that he failed to meet the additional requirement of demonstrating that his change in status "result[ed] from circumstances over which [he] had no control." Baldridge advances two theories to complete his entitlement: that he requested deferment prior to the mailing of his induction notice, making the "circumstances" requirement inapposite; or that, even if his request was post-mailing, he met the "circumstances" requirement.

■ The facts pertinent to Baldridge's claim occurred in August of 1969. By registered letter postmarked August 13, Baldridge informed his local board that on August 11, in a telephone conversation with the Peace Corps, he "was invited to train as a Peace Corps Volunteer in Nepal". The letter continued: "Yesterday [August 12] I accepted the invitation. I will be a hydrologist, a ground-water geologist, working to explore and develop ground water resources on the plains of Nepal." After explaining further details of the program, noting that he had not yet received a formal invitation, and stating that the Peace Corps would confirm his acceptance within a week or so, Baldridge closed the letter with what was at least implicitly a request for reclassification.[1] The board's induction notice bore the same date, August 13, as his letter; on the basis of the presumption of administrative regularity, we will treat it as having been mailed on that date.

■■ Baldridge's argument that his letter of August 13 should be considered to antedate the mailing of the induction order on the same date relies on Local Board Memorandum No. 72, Dec. 17, 1962, which provides that for the purpose of determining whether a registrant has met a "cut-off" date, the board should look to the date of mailing by the registrant rather than the date of receipt by the board. But this argument ignores the fact that LBM No. 72 applies in terms only to the registrant's duties under 32 C.F.R. §§ 1624.1 (request for personal appearance), 1626.2 (appeal to state board), 1627.3 (appeal to President), and 1641.6 (response to notice). Whatever the possible usefulness of LBM No. 72 as an analogy in other contexts, this court has decided that, at least assuming the mail follows

---

* Of the Tenth Circuit, sitting by designation.

1. The letter stated:
   "Needless to say I would be pleased to have this particular opportunity to apply my talents and training in practical service, and look forward to a challenging and rewarding job as measured in terms both of service to an underdeveloped nation and of valuable experience to me."

The registrant and the local board treated this as a request for reclassification, as is evidenced by the registrant's letter of August 19 to Senator Javits, in which he reports that, on calling his board that morning, he was informed that it would meet to decide whether to grant him a "deferment". Nor does the government contend otherwise now.

its regular course, a claim for a new classification shall be considered as having been filed only when received by the local board. United States v. Daniell, 435 F.2d 834, 835 (1st Cir. 1970). While *Daniell* dealt with the question whether a claim was submitted pre- or post-induction rather than pre- or post-mailing, a similar rule is appropriate here, especially since § 1625.2 makes critical the date on which "the board has mailed" an induction order. The board did so on August 13, did not receive Baldridge's letter until August 18, and was therefore within its administrative prerogative under § 1625.2 in labelling his claim a post-mailing claim.

Alternatively, Baldridge seeks to bring himself within the rather exceptionally ill-designed regulation by arguing that, even if his request was post-mailing, he was entitled to a reopening because his acceptance of the Peace Corps offer was "a change in [his] status resulting from circumstances over which [he] had no control." In so arguing Baldridge relies on Shook v. Allen, 307 F. Supp. 357 (N.D.Ohio 1969), a case in which a registrant had applied for a teaching position prior to the mailing of his induction notice but did not receive or accept an offer until after the notice had been mailed. Although the opinion was ambiguous in describing the extent to which the registrant had committed himself, in applying, to accept a job if offered, the case may possibly stand for the broad proposition that the acceptance of an offer, where the registrant has no control over its making, is itself

a circumstance over which the registrant has no control.

Without challenging the conclusion that Baldridge accepted the Peace Corps offer on August 12, the government, countering Shook with Clark v. Volatile, 427 F.2d 7 (3d Cir. 1970), would have us view Baldridge's claim as if he had accepted the Peace Corps offer after the mailing of the induction notice.[2] The *Clark* court held that the decision whether or not to accept a post-mailing offer of employment was a volitional one not beyond the registrant's control. The facts of the present case differ from those in *Shook* and *Clark* in the important respect that Baldridge accepted the offer prior to the mailing of the notice, while Shook and Clark did so after the mailing and, at least in Shook's case, had actual knowledge of the order.[3] As justification for applying the *Clark* rule to Baldridge, the government lays heavy emphasis on the administrative need for "reasonable timeliness rules". Ehlert v. United States, 402 U.S. 99, 101, 91 S. Ct. 1319, 28 L.Ed.2d 625 (1971).

■ The government, we think, takes too restricted a view in urging, in effect, that *Daniell* not only permits the board to consider a request as filed only when received but also to treat the facts alleged in the request as if they had taken place after and in full knowledge of the mailing of the order. Section 1625.2 clearly was designed for administrative convenience, but its particular design reflects more than one administrative concern. Had the Selective Service System desired merely to freeze claims at the

---

2. That Baldridge in fact accepted a Peace Corps offer on August 12 is not only unquestioned by the government but independently supported in the record; Baldridge's letter of August 13, *supra*, states that he accepted the invitation; confirmatory letters from the Peace Corps to the local board arrived as predicted in his letter; and another letter, dated August 14, to his Congressman, corroborates the acceptance. The request of August 21, on which the dissent relies to establish that the letter of August 13

was not a request, was merely a form reproduced and distributed by the Peace Corps and does not, in our view, indicate that Baldridge felt his letter of August 13 to be other than a request for reclassification.

3. *See* 307 F.Supp. at 359. Clark requested reclassification four days after his local board had mailed him an induction notice, 427 F.2d at 9, but it is not clear from the opinion whether he knew that it had been issued.

time of mailing, it need not have encumbered § 1625.2 with a provision for reopening upon a finding of circumstances beyond a registrant's control. The inclusion of that exception suggests that the regulation was designed to serve more complicated administrative ends, that the director did not intend merely to cut off claims, but mixed this purpose with that of avoiding post-mailing scurrying for safe haven. But for the regulation, a large percentage of those receiving induction notices might attempt to avoid induction by suddenly unearthing deferable pursuits. The effect on the ability smoothly to supply the needs of the military for draftees could well be disastrous.

To the extent that the regulation is intended to prevent runs-for-cover with the knowledge of an induction order, acceptance of an offer of employment prior to the mailing of an induction notice is obviously not one of the evils against which it is aimed. When Baldridge accepted the Peace Corps offer on August 12, he could not have known of the order or acted in response to it since it did not yet exist. Even if the acceptance was in one sense within his "control", the intent of the regulation was not violated.

This does not completely dispose of the contention that, even though § 1625.2 creates an exception for those whose changes of status result from circumstances beyond their control, the regulations must surely, to forestall chaos, have provided the local board with a means to ensure that last-minute claims do not interfere with orderly induction. Baldridge might, for example, have waited until September 17, the day before his scheduled induction, to request reclassification. A sufficient answer is

that our holding does not relieve registrants from their duty promptly to inform their local boards of any changes in status. Cf. United States v. Daniell, supra, 435 F.2d at 835. 32 C.F.R. § 1625.1(b), part of subsection immediately preceding the one here in question, provides that a registrant "shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as . . . any change in his occupational . . . status . . . ." In writing to his local board the day after he accepted the Peace Corps offer, Baldridge complied with this requirement. If § 1625.1(b) is construed strictly, as would be appropriate in this context, the local boards would not be unduly burdened by the need to reopen the classifications of the few who are likely to be situated similarly to Baldridge.[4]

The construction which we give § 1625.2 is not an altogether satisfactory one, but neither is any other. On the government's reading, those who have accepted employment without the present threat of induction will be penalized by a regulation which seeks to prevent conscious last-minute avoidance of an order to report for induction. Even where, as here, the registrant has shown more than reasonable promptness in informing his board of a change in his status, he may retroactively be deprived of his apparent deferment if he happens to live a great distance from his draft board. The interpretation adopted here at least treats equally all whose changes of status occurred prior to the mailing of the induction notice, provided that they have acted with reasonable promptness.

Reversed.

4. We need not, and do not, decide which of the interrelated purposes of § 1625.2 would predominate in the case of a registrant to whom an induction notice had been mailed but who did not yet have actual knowledge of it when he accepted an offer of employment. We note only that, although Ehlert v. United States, supra, was in large measure concerned with the peculiarities of conscientious objection, it would counsel that, in a case of post-mailing acceptance, the cut-off aspect of § 1625.2 be given primary importance.

BREITENSTEIN, Senior Circuit Judge (dissenting).

I respectfully dissent. The majority says that the Board was "within its administrative prerogative under § 1625.2 in labelling his [registrant's] claim a post-mailing claim." I agree. The issue is whether the status change resulted "from circumstances over which the registrant had no control."

In Ehlert v. United States, 1971, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, the Court was concerned with a post-mailing CO claim. With reference to § 1625.2 the Court said that "the regulation was meant to cover at least such nonvolitional changes as injury to the registrant or death in his family making him the sole surviving son." Ibid. at 104, 91 S.Ct. at 1323. The Court also said that "it is wholly rational to confine it [§ 1625.2] to those 'objectively identifiable' and 'extraneous' circumstances that are most likely to prove manageable without putting undue burdens on the administration of the Selective Service System." Ibid. at 105, 91 S.Ct. at 1324.

The majority says that "acceptance of an offer of employment prior to the mailing of an induction notice is obviously not one of the evils against which it [§ 1625.2] was aimed." I cannot read the record as showing a pre-mailing offer and acceptance of employment. The registrant's August 13 letter contains the following statement immediately before the paragraph quoted in n. 1 of the majority opinion:

"I have not yet received formal invitation, but will notify you as soon as I have. In addition the Peace Corps in Washington should notify you of my acceptance within a week or so from now."

An August 22 letter from the Peace Corps to the Board says that the registrant "Entered Peace Corps training on 8/21/69." On August 23 the registrant wrote the Board saying that he entered the Peace Corps on August 21, and that:

"I hereby request II–A occupational deferment on the grounds that my Peace Corps service is in the national interest."

The record convinces me that there was no pre-mailing offer of employment. Absent an offer, there could be no acceptance.

So far as the registrant is concerned, the offer of employment in this case was nonvolitional. To read § 1625.2 to permit an anticipatory acceptance creates an unmanageable situation unduly burdensome to the Selective Service System. Here, the offer of employment came after the mailing of the induction notice. The acceptance came after the offer and was a volitional act. Accordingly, § 1625.2 bars reopening. Clark v. Volatile, 1970, 3 Cir., 427 F.2d 7, 10. Changes in deferment procedures should be made by Congress or the Selective Service System.[1]

---

1. For example Executive Order No. 11527, 35 Fed.Reg. 6571 (1970), provides that as of April 23, 1970, requests for occupational deferment based on employment made on or after that date will no longer be considered. See Local Board Memorandum No. 105.