## BREEN *v.* SELECTIVE SERVICE LOCAL BOARD NO. 16 ET AL.

No. 65.   Argued November 19, 1969—Decided January 26, 1970

*Emanuel Margolis* argued the cause for petitioner. With him on the brief were *Lawrence P. Weisman* and *Melvin L. Wulf.*

*Assistant Attorney General Ruckelshaus* argued the cause for respondents. With him on the brief were *Attorney General Mitchell, Assistant Attorney General Wilson, Morton Hollander,* and *Ralph A. Fine.*

*George Soll* and *Joseph B. Robison* filed a brief for the American Jewish Congress as *amicus curiae* urging reversal.

MR. JUSTICE BLACK delivered the opinion the Court.

This case raises a question concerning the right of a young man ordered to report for induction into the Armed Forces to challenge the legality of that order prior to reporting for duty. Petitioner Breen, while enrolled in the Berklee School of Music in Boston, Massachusetts, was given a II–S student classification by his local draft board, and deferred from military service pursuant to the provisions of the Military Selective Service Act of 1967, 81 Stat. 100, 50 U. S. C. App. § 451 *et seq.* (1964 ed. and Supp. IV). According to an agreed stipulation of facts, in November 1967 he surrendered his draft registration card to a minister at a public gathering "for the sole purpose of protesting United States involvement in the war in Vietnam." Shortly thereafter his local draft board declared he was "delinquent" for failing to have his draft card in his possession and at the same time reclassified him I–A— available for military service.[1] He appealed this reclassification to the appropriate Selective Service Appeal Board, and while that appeal was pending filed this suit

---

[1] This reclassification was undertaken pursuant to 32 CFR § 1642.12.

in the United States District Court in February 1968, seeking an injunction against any possible induction into the Armed Forces on the ground that his delinquency reclassification was invalid. The respondent local board moved to dismiss the suit for want of jurisdiction, relying on § 10 (b)(3) of the Act which provides that:

> "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction . . . ."[2]  50 U. S. C. App. § 460 (b)(3) (1964 ed., Supp. IV).

The District Court granted the motion to dismiss and Breen appealed that decision to the Court of Appeals.[3] While the appeal was pending, we rendered our decision in *Oestereich* v. *Selective Service Bd.,* 393 U. S. 233 (1968), holding that § 10 (b)(3) did not bar pre-induction judicial review in the circumstances presented in that case. Although Breen argued that *Oestereich* controlled his own case, the Court of Appeals affirmed the District Court's dismissal of the suit, with one judge dissenting, holding that *Oestereich* did not cover this case and § 10 (b)(3) therefore required dismissal of the suit. 406 F. 2d 636 (C. A. 2d Cir. 1969). We granted

---

[2] Although this provision would appear to preclude judicial review by habeas corpus after the registrant submitted to induction, we have already construed the statute to allow such review. *Oestereich* v. *Selective Service Bd.,* 393 U. S. 233, 235, 238 (1968).

[3] During the pendency of that appeal the Appeal Board upheld the reclassification and the local board then ordered Breen to report for induction. The induction order has been stayed pending decision in this case.

a petition for certiorari, 394 U. S. 997 (1969), and, because we conclude that *Oestereich* does control this case, we reverse the judgment of the Court of Appeals.

In *Oestereich* a student preparing for the ministry surrendered his draft registration card in protest against the war in Vietnam and was reclassified as a "delinquent." He then filed suit seeking to enjoin his induction, claiming that he was being inducted contrary to the clear statutory requirement that students preparing for the ministry "shall be exempt from training and service" under the Act, 50 U. S. C. App. § 456 (g). We held in that case that since Congress had unambiguously said that students preparing for the ministry were not to be drafted and, since there was no indication in the statute that such exemptions could be denied for "delinquency," Oestereich's induction was unlawful and in such a case § 10 (b)(3) would not be interpreted to bar preinduction judicial review and thereby force the registrant to submit to an illegal induction or risk the possibility of a criminal prosecution to regain his exempt status.

In the present case petitioner Breen argues that he, like Oestereich, should not be inducted and he relies on § 6 (h)(1) of the Act, which provides that:

> "Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment." 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV).

In his complaint Breen alleged that he was a 20-year-old student and argued that he was clearly qualified for a student deferment. The Government has never con-

tested Breen's factual allegations concerning his student status, nor has it argued that he is not qualified for such a deferment for any reason except the alleged "delinquency." As in *Oestereich,* we do not find any indication that Congress intended to allow the draft boards to deprive otherwise qualified students of their deferments for the reasons relied upon in this case.

In concluding that *Oestereich* did not control this case, the Court of Appeals felt that the reference in § 6 (h)(1) to "such rules and regulations as [the President] may prescribe" was an indication that Congress authorized revocation of student deferments for violations of the delinquency regulations. 406 F. 2d, at 638. That conclusion must be rejected for several reasons. The explicit language of the Act provides that the President "shall" provide for the deferment of undergraduate students except as otherwise provided by the terms of the Act itself, and Congress then set forth the specific conditions that a student must meet to qualify for such a deferment.[4] The reference to "rules and regulations" is clearly intended only to authorize such additional administrative procedures as the President may find necessary to insure that all qualified students are given the deferment that Congress provided in § 6. There is nothing in the language of the Act itself that indicates a congressional desire to allow the President to add to or subtract from the factors specified in the statute

---

[4] The Act also provides that student deferment status may be lost under certain conditions.

"A deferment granted to any person under [this provision] shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs." 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV). There is no contention raised here that Breen has lost his deferred status for any of these statutory reasons.

for determining when students would be deferred.[5] The legislative history of § 6 (h)(1) clearly indicates that Congress intended that only the conditions specified in that section need be met to warrant a student deferment. Prior to the 1967 Act the draft law stated that student deferments were provided only according to presidential regulation and in practice such deferments were subject to the discretion of the local draft boards.[6] The committee reports and floor debates on the 1967 Act show that a primary purpose of the amendments was to eliminate this local option and provide clear, uniform standards for undergraduate student deferments.[7] When Congress thus acted to replace discretionary standards with explicit requirements for student deferments, it did not specifically provide or in any way indicate that such deferred status could be denied because the registrant failed to possess his registration certificate.[8] Finally, any contention that "delinquency" induction is proper in this case must be

[5] The Act does allow the President to restrict student deferments on a finding that the needs of the Armed Forces require such action, 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV), but he has not made any such finding at this time.

[6] See Selective Service Act of 1948, § 6 (h), 62 Stat. 611, as amended. The regulations promulgated pursuant to this authority permitted student deferments in the discretion of the local boards with certain suggested guidelines. See 32 CFR §§ 1622.25, 1622.25a (1967 ed.).

[7] H. R. Rep. No. 267, 90th Cong., 1st Sess., 25–26 (1967); H. R. Conf. Rep. No. 346, 90th Cong., 1st Sess., reprinted in U. S. Code Cong. & Admin. News, 90th Cong., 1st Sess., 1352, 1356–1359 (1967); 113 Cong. Rec. 14093, 14095, 16434 (1967).

[8] The suggestion that the fleeting reference to "delinquents" in § 6 (h)(1) of the Act, 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV), authorizes delinquency inductions must be rejected for the reasons set forth in *Oestereich, supra,* at 236–237, and in *Gutknecht* v. *United States, ante,* at 302.

rejected for the reasons set forth in our decision in *Gutknecht* v. *United States, ante,* p. 295, holding that induction pursuant to the delinquency regulations has not been authorized by Congress.

The Attorney General advances another argument for distinguishing this case from *Oestereich, supra.* He points out that Oestereich met the requirements for a statutory "exemption" from military service, while Breen is at best qualified only for a statutory "deferment." On the basis of this observation he urges that the provisions of § 10 (b)(3) preclude pre-induction judicial review in all cases of deferments and that *Oestereich* provides an exception only in certain cases where an exemption is claimed. We fail to see any relevant practical or legal differences between exemptions and deferments. The effect of either type of classification is that the registrant cannot be inducted as long as he remains so classified. Congress has specifically said that the only persons who may be inducted into the Armed Forces are those "who are liable for such training and service and who at the time of selection are registered and classified, *but not deferred or exempted.*" 50 U. S. C. App. § 455 (a)(1) (1964 ed., Supp. IV).[9] (Emphasis added.) Thus it is clear that the crucial distinction in draft classifications is between individuals presently subject to induction and those who are not so subject, either because of deferment or exemption.

The Attorney General also argues that a rational distinction exists in the statutory scheme between deferments which merely postpone the time when a registrant will serve and exemptions which place the registrant "outside the manpower pool." Brief for the Respondents 20–21. A careful reading of the entire Act indicates that no such consistent distinction is preserved. Con-

---

[9] This statutory directive is implemented by 32 CFR § 1631.7.

gress has provided that "[n]o . . . exemption or deferment . . . shall continue after the cause therefor ceases to exist." 50 U. S. C. App. § 456 (k). Many of the "exemptions" are not absolute, as the Attorney General implies, but conditioned on certain factors. Thus an exempt ministerial student like Oestereich will lose that exempt status if he withdraws from study in preparation for the ministry. Similarly exempt veterans can be inducted into the Armed Forces if Congress declares a war or national emergency. 50 U. S. C. App. § 456 (b). On the other hand there is absolutely no assurance that an individual who is simply deferred will only have his military obligation postponed. So long as a registrant remains in a deferred classification he cannot be inducted, and deferment past the maximum age of draft liability would effectively exempt the registrant from compulsory military service. Although a registrant like Breen cannot be deferred as an undergraduate student past his 24th birthday,[10] he may continue to be deferred on the basis of extreme hardship to dependents or employment in the national interest. 50 U. S. C. App. § 456 (h)(1) (1964 ed., Supp. IV). There is thus no statutory scheme to permanently exempt certain individuals while only deferring service for others. Both deferments and exemptions accomplish the same congressional purpose, that of not inducting certain registrants at a particular time.

We are consequently unable to distinguish this case from *Oestereich.* In both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a "clear departure by the Board from its statutory mandate," *Oestereich, supra,* at 238, and in both cases § 10 (b)(3)

---

[10] See n. 4, *supra.*

of the Act should not have been construed to require the registrants to submit to induction or risk criminal prosecution to test the legality of the induction order. The judgment below is reversed and the case remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE HARLAN, concurring.

While I fully agree with today's holding that pre-induction review is available to the petitioner here, and subscribe to much of the Court's opinion, I would rest the holding on a different footing.

The Court's opinion here, as in *Oestereich v. Selective Service Bd.*, 393 U. S. 233 (1968), appears to make the availability of pre-induction review turn on the lawfulness of the draft board's action or, to put it another way, on the certainty with which the reviewing court can determine that the registrant would prevail on the merits if there were such judicial review of his classification. On the other hand, under the test put forward in my separate opinion in *Oestereich*, 393 U. S., at 239–245, the availability of pre-induction review turns, not on what amounts to an advance decision on the merits, but rather on the nature of the challenge being made.

In *Oestereich*, the registrant sought pre-induction review of claims that the delinquency procedure employed by the board was "not authorized by any statute," was "inconsistent with his statutory exemption," and was "facially unconstitutional," 393 U. S., at 239. I pointed out that judicial scrutiny of such legal contentions, unlike the review of "factual and discretionary decisions" pertaining to a board's classification of a particular registrant, presented no "opportunity for protracted delay" in the operations of the Selective Service

System—the primary congressional concern in enacting § 10 (b)(3), 393 U. S., at 241. To avoid the "serious constitutional problems" implicit in depriving a registrant of "his liberty without the prior opportunity to present to *any* competent forum" his claims that the delinquency procedure was invalid, 393 U. S., at 243, I therefore interpreted § 10 (b)(3) not to preclude preinduction judicial review. Viewed from the perspective of my opinion in *Oestereich,* this case is indistinguishable, for the petitioner here, as in *Oestereich,* makes legal challenges to the delinquency procedure that do not require review of a factual and discretionary decision of a board.

As to the merits of petitioner's challenges, I agree, for the reasons stated by the majority, that it makes no difference that through the operation of the delinquency regulations Breen lost a II–S student deferment whereas Oestereich lost a IV–D exemption as a divinity student preparing for the ministry. More generally, the delinquency regulations used here have now been held to be unauthorized by statute, *Gutknecht* v. *United States, ante,* p. 295.

On this basis, I concur in the reversal of the judgment below.

MR. JUSTICE BRENNAN, concurring.

In *Oestereich* v. *Selective Service Board,* 393 U. S. 233 (1968), I joined MR. JUSTICE STEWART's dissent expressing the view that § 10 (b)(3) was designed to permit judicial review of draft classifications only in connection with criminal prosecutions or habeas corpus proceedings. 393 U. S., at 245. But continued adherence to that construction is foreclosed by the Court's holding in that case that § 10 (b)(3) did not preclude pre-induction judicial review of the case of a registrant entitled to a statutory

exemption. Therefore, because I too "fail to see any relevant practical or legal differences between exemptions and deferments," I join the opinion of the Court.

MR. JUSTICE STEWART, with whom THE CHIEF JUSTICE joins, concurring in part.

For the reasons expressed by MR. JUSTICE BRENNAN, I join the opinion of the Court insofar as it holds that the District Court had jurisdiction to entertain the petitioner's suit and should have granted him the injunction he sought. I do not, however, join the Court's opinion insofar as it holds that the delinquency regulations have not been authorized by Congress. See *Gutknecht* v. *United States, ante,* p. 314 (concurring in judgment).