Joe Thomas **GILCHRIST**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 67–69.

United States Court of Appeals,
Tenth Circuit.

Aug. 21, 1970.

Eugene Mathews, of Mathews, Cain & Lynn, Oklahoma City, Okl., for appellant.

James M. Peters, Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, Chief Judge, HILL, Circuit Judge, and LANGLEY, District Judge.

HILL, Circuit Judge.

Appellant, Joe Thomas Gilchrist, was indicted and convicted for refusing to submit to induction into the Armed Forces of the United States. Gilchrist takes this appeal and challenges among other things, the legitimacy of the Selective Service's delinquency regulations which were applied to him so as to deprive him of his II-S deferment and to accelerate him in the order-of-call for induction.

In 1968, Gilchrist was an undergraduate student attending Cornell University. His Local Board No. 119 had deferred him as a student and classified him as II-S. There is no question but that at all relevant times Gilchrist has met the statutory requirements for a II-S deferment.[1] On April 10, 1968, appellant Gilchrist by mail returned his registration card and current classification notice to his draft board. Accompanying the registration card and classification notice was a letter from Gilchrist which in pertinent part advised the Board: "After long and careful consideration, I have found the carrying of a draft card on my person to be inconsistent with my religious, ethical, and moral beliefs. For this reason, I am returning to you my draft card and my classification card."

The letter together with the cards was received by Local Board No. 119 on April 15, 1968. On May 16, 1968, the Board met to consider what action to take, and pursuant to its regulations and Local Board Memorandum No. 85, Gilchrist was declared delinquent[2] and accordingly he was reclassified I-A(1).[3]

---

1. Military Selective Service Act of 1967, Sec. 6(h) (1); 50 App.U.S.C. § 456(h)(1), states that a student deferment shall continue until the registrant completes the requirements for a baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever occurs first.

2. Under 32 C.F.R. § 1617.1, registrants are required to possess their Registration Certificate, and 32 C.F.R. § 1642.4 states that registrants who fail to perform duties required by Selective Service law may be declared delinquent. Pursuant to 32 C.F.R. § 1642.12, delinquents without more may be classified I-A, available for service. Local Board Memorandum No. 85 is a directive to local draft boards which in terms summarizes the regulation cited and declares that whenever a local board receives an abandoned or mutilated registration card or classification notice, the registrant should be declared delinquent for failure to possess his card and reclassified into a class available for service.

3. Under 32 C.F.R. § 1631.7, registrants available for service are listed in six categories and the order-of-call for induction is according to the order of the categories. The first category is delinquents; the

Thereafter on May 22, 1968, Gilchrist was mailed notice of the Board's action. The stated reason for the delinquency was his failure to possess the registration card and notice of classification. On July 3, 1968, the Board sent a notice to Gilchrist ordering him to report for induction on July 23, 1968. Gilchrist appeared but refused to submit to induction. He was tried to the court without a jury and convicted for refusing induction and among the defenses raised was the legitimacy of the punitive action taken by Local Board No. 119.

Hence the operative facts are: Gilchrist returned his draft cards, the Board for this reason declared him delinquent, and pursuant to Selective Service Regulations regarding delinquents, Gilchrist was reclassified I-A available for service and he was advanced to the top category in the order-of-call for induction. The issue presented is whether the Military Selective Service Act of 1967 authorizes the delinquency regulations under which the Board reclassified Gilchrist and accelerated his induction.

■ Before considering the issue posed, we must answer the preliminary question whether our review is limited because Gilchrist failed to exhaust his administrative remedies. The government argues that since Gilchrist did not administratively appeal his Local Board's decision to declare him delinquent and reclassify him I-A, he is thereby precluded from challenging in the courts the validity of his reclassification or induction order. We cannot agree that under the circumstances of this case the failure to take an administrative appeal precludes judicial review. First of all, it is not apparent that un-der the regulations, Gilchrist had the right of appeal from his Local Board's declaration of delinquency. The administrative remedies available to registrants all pertain to reclassification. Gilchrist could have appealed his reclassification, but there is nothing to indicate that he could have done anything more than reopen his classification. That is, there is no reason to believe that on appeal from his reclassification he could have challenged his declared delinquency or the delinquency regulations which provided for his reclassification I-A and his immediate induction.[4] Even if Gilchrist would have attempted to reopen his classification, it would have been a futile gesture since Local Board No. 119 was acting in precise conformity with the regulations and with Local Board Memorandum No. 85 when it declared Gilchrist delinquent and reclassified him. The Appeal Board—which must classify registrants "giving consideration to the various classes in the same manner in which the Local Board gives consideration thereto when it classifies a registrant"[5]—would have simply classified Gilchrist I-A just as the Local Board did without considering the substantial question whether the delinquency declaration and the corresponding punitive results of the declaration were legal.

■ Moreover, we believe that judicial review is not precluded in this case because the interests underlying the exhaustion doctrine are outweighed in this case by the exceedingly harsh consequences imposed upon Gilchrist if he is denied judicial review.[6] The question which Gilchrist would have this court consider does not involve any particular

---

next is volunteers; the other four categories comprise non-volunteers. By classifying Gilchrist I-A(1), the Board classified him as available for service and listed him in the top category for induction. This in effect accelerated his induction because it jumped him past volunteers and those non-volunteers who un-der normal circumstances would have been listed ahead of him.

4. *See* Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

5. 32 C.F.R. § 1626.26.

6. *See* McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

expertise possessed only by the Selective Service System. Rather the question involves the legitimacy of the Selective Service regulations applied to Gilchrist and promulgated under the Military Selective Service Act of 1967. This is a matter of statutory construction whether the Act authorizes the regulations, and this of course does not involve administrative judgment or the discretion of the Selective Service System. Judicial review here is not a matter of premature interruption of the administrative process, nor is this a situation where it is necessary or desirable to let the agency develop the factual background upon which the decision should be based. There is simply no overwhelming need nor a significant interest to be served by having the agency's Appeal Board initially consider the question presented by appellant.[7] For these same reasons and in similar circumstances, the Supreme Court in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) has said that an application of the exhaustion doctrine is not appropriate; we likewise take that position.

We turn now to appellant's main contention. In sum, appellant argues that under the Act, his statutory II-S student deferment cannot be denied him for any reason other than his failure to meet the statutory requirements; that in fact he was reclassified I-A because he was delinquent for failing to possess his draft cards; and that because of his delinquency and his I-A classification, he was given top priority for induction. Appellant concludes saying that, notwithstanding the Selective Service System's regulations, the Act does not authorize reclassification and accelerated induction as a punitive measure for failing to possess draft cards.

In reply the government does not dispute that Gilchrist at all relevant times has met the statutory requirements for a II-S student deferment. Instead, the government suggests that Gilchrist waived his II-S student deferment and that the Board reclassified him I-A because that was the only other classification into which Gilchrist could be placed. However, the record does not bear this out. The Board's action was based solely on Gilchrist's letter of April 10, 1968. The tenor of the letter was that Gilchrist was taking the action of returning his draft cards as a measure of protest of the Viet Nam War. Gilchrist specifically elaborated that his reason for returning the cards was that carrying the cards was inconsistent with his religious, ethical, and moral beliefs. Nothing in that letter affirmatively indicated to the Draft Board that Gilchrist was waiving his student deferment, and we cannot accept this as the reason for Gilchrist's reclassification.

On the contrary, it is perfectly obvious from the record that the Board declared Gilchrist delinquent and reclassified him I-A because he had returned or abandoned his draft cards. The Selective Service file on Gilchrist shows that the Board took its action "per LB-85." Local Board Memorandum No. 85 in substance advises Local Boards that if a registrant returns his registration card or classification notice, he is to be declared delinquent and reclassified into a class available for service as a delinquent. At Gilchrist's trial, the Executive Secretary of Local Board No. 119 confirmed that Gilchrist was reclassified pursuant to Local Board Memorandum No. 85. Moreover the delinquency notice mailed to Gilchrist cited failure to possess the cards as the reason for declaring him delinquent.

---

7. In Breen v. Selective Service Local Bd., 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) and Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Supreme Court considered the identical issue on pre-induction judicial review without the aid of an Appeal Board decision.

■ Thus the record clearly shows that as a result of returning his registration certificate and classification notice, Gilchrist was declared delinquent, and from this he was reclassified I-A, deprived of his II-S deferment, and given top priority in the order-of-call for induction. This action by the Board is not authorized by the Military Selective Service Act of 1967, and the delinquency regulations providing for this action have no basis in the Act.

The Supreme Court has recently held in Breen v. Selective Service Local Board, 396 U.S. 460, 90 S.Ct. 661, 24 L. Ed.2d 653 (1970) that if a registrant meets the statutory requirements for a student deferment, that deferred status cannot be denied because the registrant was delinquent in failing to possess his registration certificate. In Breen and also in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), the Supreme Court examined the Act and the legislative history and concluded that the Congress neither authorized the Selective Service to reclassify exempt or deferred registrants for punitive purposes, nor did it provide for accelerated induction of delinquents. The "delinquency" device simply does not impose in the Selective Service a broad and sweeping power to discipline registrants; and, notwithstanding the Selective Service delinquency regulations, Local Board No. 119 was not empowered to punitively deprive Gilchrist of his statutory deferment and provide for his immediate induction solely in response to his activities wholly unrelated to his classification.

We conclude that when Gilchrist, who was required by relevant law not to be inducted, was in fact ordered to report for immediate military service, the Board departed from its statutory mandate and its order for induction was invalid.

Reversed.