Burley COLEMAN, 212–44–7087, C–8–2– U.S.A.C.T.I., Ft. Bragg, N. C., Appellant,

v.

Lt. Gen. John J. TOLSON, Commanding General, Ft. Bragg, N. C., Appellee.

No. 14702.

United States Court of Appeals, Fourth Circuit.

Dec. 18, 1970.

John H. Harmon, New Bern, N. C., on brief for appellant.

Warren H. Coolidge, U. S. Atty., and Richard J. Bryan, Asst. U. S. Atty., on brief for appellees.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from the denial of Burley Coleman's petition for a writ of habeas corpus. He complains that he was inducted into the United States Army as the result of an unlawful reclassification by his local board from II–S to I–A. The district court concluded that Coleman was not "satisfactorily pursuing a full-time course of instruction" within the meaning of Selective Service Regulation 1622.25, 32 C.F.R. § 1622.25, and that the reclassification and subsequent induction was not unlawful and denied relief. We reverse.

Coleman entered Morgan State College in a four-year program on September 12, 1966. He was classified II–S on December 12, 1967. Morgan State College submitted a Student Certificate (SSS Form 109) to Coleman's local board on October 25, 1968. Although Coleman was then in his third "academic year" as defined by Selective Service Regulation 1622.25(b), the Student Certificate indicated that he was classified as a second-year student. The Certificate indicated further, however, that Coleman was still in his second year "due to administrative control," and that he would be able to obtain the credit needed for graduation in June 1970. In addition to the Student Certificate, the Registrar of Morgan State College, William W. Proctor, submitted to the board a letter which said in part:

It appears that certain male students who have matriculated in Morgan State College are experiencing difficulty in obtaining student deferment classification. For this reason we address this special communication to you requesting for the registrant special consideration for a possible deferment.

Because of administrative regulations, approximately one-half of the freshman or first-year class is required to pursue a minimum full-time credit load. This means that instead of the usual two semesters required for the completion of the first college year, three semesters are required. After two semesters, if the student is permitted to remain in school, his scholastic performance has given every indication that he will be able to complete all requirements within the normal four-year period.

We certify that the student named above [Coleman] was affected by this regulation. He has been enrolled as a full-time student since the date of matriculation, which was September 12, 1966. He is currently enrolled in the second college year. His scholastic performance to date has been satisfactory.

Despite this explanatory letter, appellant Coleman was classified I–A on November 13, 1968, and inducted into the Army on June 6, 1969.

College students who are "satisfactorily pursuing a full-time course of instruction" are entitled to deferment by statute. 50 App. U.S.C. § 456(h) (1). That statutory section empowers the President to prescribe rules and regulations for granting such deferments. Selective Service Regulation 1622.25, 32 C.F.R. § 1622.25, is the regulation implementing the statute. Subsection (c) of that regulation defines the phrase "satisfactorily pursuing a full-time course of instruction." It provides:

> A student shall be deemed to be "satisfactorily pursuing a full-time course of instruction" when, during his academic year, he has earned, as a minimum, credits toward his degree which, when added to any credits earned during prior academic years, represent a proportion of the total number required to earn his degree at least equal to the proportion which the number of academic years completed bears to the normal number of years established by the school to obtain such degree. For example, a student pursuing a four-year course should have earned 25% of the credits required for his baccalaureate degree at the end of his first academic year, 50% at the end of his second academic year, and 75% at the end of his third academic year.

This section speaks affirmatively with respect to pro rata progress through a normal four-year college program. In such a situation, apparently the norm in America, the regulation sensibly relieves the Board of its ordinary duty to consider and apply the law to the facts: the usual student is "deemed" entitled to deferment. A convenient administrative presumption is established.

Because the regulation speaks affirmatively to the normal progress through a four-year program the government urges that it inferentially implies a negative: that no student, regardless of circumstances, is entitled to deferment unless he attains each year the proportionate number of credit hours. We disagree.

Fifty percent of the entering freshmen at Morgan State College are required to take a minimum load and thus cannot complete their first year until the end of their third semester. Applying the negative inference urged by the government to all of the students at Morgan State College would mean that *one-half* of the students would lose their II–S classifications at the end of the first year even if they attained straight A's in all of the courses they were permitted to take. In fact, none of these students would ever be entitled to II–S classification, since it is clear from the time they begin college that they could not complete 25 percent of their academic requirements by the end of their first year.

The government argues in terrorem that any interpretation of Selective Service Regulation 1622.25(c) other than an absolute requirement that a student in a four-year program earn 25 percent of the required credits by the end of his first year and 50 percent by the end of the second year would mean that the local board would have to wait until a student's fourth year before they could remove his II–S classification. We think not.

Whether a student is "satisfactorily pursuing a full-time course of instruction" is a question of fact. In resolving that question the source of information and evidence is obviously the college administration. So long as a college certifies that a registrant is expected to graduate on time, and it appears reasonably probable that he can do so, he should be entitled to retain his II–S classification. When a college cannot certify that the registrant is expected to graduate on time, certainly a local board would have a, basis in fact for terminating the deferment. But we do not suggest that a local board is necessarily controlled by the certification of the college. Even where the college certifies

that the registrant is expected to graduate on time, in a given case a local board may nevertheless conclude otherwise, e. g., where the registrant is not passing the assigned work and has fallen further behind, there may be a basis in fact for discontinuing deferment. See United States v. Brooks, 415 F.2d 502 (6th Cir. 1969).

Our conclusion that Selective Service Regulation 1622.25(c) cannot be so negatively construed in all fact situations is supported by the Selective Service System's own interpretation of this regulation in another fact context. Local Board Memorandum 43, issued by the Director, provides:

> When a registrant transfers from a junior college or community college to a degree granting institution, and loses credits *through no fault of his own,* he may have less than the percent of course completion required in Section 1622.25(c) * * *. The local board may, in its discretion, grant a II–S deferment for the first year after transfer, subject to reevaluation at the end of that year based on the work accomplished at the new institution (emphasis added).

Half of the students at Morgan State College are not allowed to take a full load of courses in their freshman year "through no fault of their own" for much the same reason that students transferring from a junior college may discover that the new institution refuses to accept all credits earned at the earlier institution.

 Although it does not appear in the record, the government concedes in its brief that Coleman was only seven hours short of the course credits required to be classified as a third-year student at the end of his second year. There is nothing in the record to suggest that appellant had not performed adequately in the courses he was permitted to take. Since Coleman was prevented from achieving parity through no fault of his own, and was at the time of his reclassification in good standing consistent with the rules of the college, and since it appears probable that he could have made up a seven hour credit deficiency in his final two years, we conclude that there was no basis in fact for the removal of Coleman's II–S classification. Accordingly, on remand the district court will issue the writ.

Reversed and remanded.