Peter **KOCHLACS** et al., Plaintiffs-Appellants,

v.

**LOCAL BOARD NO. 92** et al., Defendants-Appellees.

No. 72–1274.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1972.

Decided Feb. 23, 1973.

Donald S. Frey, Evanston, Ill., for plaintiffs-appellants.

James R. Thompson, U. S. Atty., and William T. Huyck, and Ann P. Sheldon, Asst. U. S. Attys., Chicago, Ill., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

PELL, Circuit Judge.

Plaintiffs appeal from the dismissal of their amended complaint.[1]

1. The Government's motion to dismiss asserted that the court lacked civil jurisdiction over the subject matter pursuant to 50 U.S.C. App. § 460(b)(3), § 10(b) (3) of the Selective Service Act, and that the complaint failed to state a claim upon which relief can be granted. Rule 12(b)(1) and (6), Fed.R.Civ.P., was the basis

Typified as a class action, the suit named as defendants four specified selective service boards and the "National Selective Service System Office, Washington, D.C." and purportedly sought relief on behalf of theological students and ministers who have refused their 4–D classifications and registration cards, "all of whom made such refusal not to participate in the War Selective Service System (even by holding 4–D classifications) because of their commitment to their Christian religious beliefs." Injunctive and declaratory judgment relief was sought.

The four named plaintiffs were allegedly entitled to 4–D exemptions,[2] 32 C. F.R. § 1622.43. Plaintiffs Kochlacs and Bates were students at Garrett Theological Seminary and plaintiffs White and Heuerman were ministers of the United Methodist Church. All had turned in their 4–D classification cards to their respective boards and all but Heuerman their registration cards, "in protest of the continuance of the War Selective Service System."

Kochlacs had received an order from his board to report for induction and he had refused to comply with the order "for the reason that his religious beliefs call him to a higher obedience above that obedience demanded of him by the laws of the United States Selective Service System." There is no indication that he had been prosecuted for his refusal. The other three named plaintiffs allegedly expected similar orders of induction. There is no allegation, however, that any of them had been reclassified from 4–D. A violation of First Amendment rights was claimed by the four as well as for the members of the class.

■ It is the plaintiffs' view that there is an unconstitutional violation of their freedom of religion for them to have to participate in the Selective Service System in any way. They thus seek to be exempted from all requirements, including, apparently, the registration requirements. We find this contention without merit. Title 50 U.S.C. App. § 456(g), in setting out the exemption for ministers and students preparing for the ministry, specifically states that they are exempted from training and service, but not from the registration provisions of the section.[3] Thus ministers are entitled to no extraordinary treatment as to the registration requirement. In United States v. Henderson, 180 F.2d 711 (7th Cir. 1950), cert. denied, 339 U. S. 963, 70 S.Ct. 997, 94 L.Ed. 1372, this court had before it a similar challenge to the registration requirements. That challenge was rejected by the court and plaintiffs have given us no reason to reconsider that well-reasoned opinion. Moreover, we note that the Selective

of the respective points. In its ruling sustaining the motion, the district court indicated that the plaintiffs lack standing, thereby apparently finding § 10(b)(3) applicable. Subsequently, the court also indicated that the complaint had been dismissed because it did not state a cause of action. While a motion to dismiss is ordinarily directed to the allegations of the complaint and if a claim for relief could conceivably be proved thereunder the motion should not be granted, here the district court in its order of dismissal did refer to the "pleadings, briefs, and affidavits" spread of record before the court. Affidavits were filed in support of plaintiffs' motion for a temporary injunction. In our review, we have considered not only the allegations of the complaint but matters advanced by plaintiffs in the affidavits and brief. These matters, of course, reflect upon the aspect of whether a claim for relief could conceivably have been proved.

2. Subsequent to the filing of the suit a change of Selective Service Regulations placed theology students in a deferred 2–D classification while ministers would remain in a 4–D exemption status. For the purposes of this appeal we do not consider the distinction of significance, Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 463, 90 S.Ct. 661, 24 L.Ed. 2d 653 (1970), and therefore shall collectively refer to the plaintiffs, as they have in their complaint, as being entitled to a 4–D classification.

3. This provision was in the Act prior to the 1971 amendments and was carried over by those amendments into the present law.

Service System does provide administratively for the handling of those who are conscientiously opposed to war. The congressionally ordained administrative structure has been repeatedly upheld by the Supreme Court on a balancing of the broad power of Congress to raise armies as against primary First Amendment rights. *See* United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

Although their underlying contention must be rejected, plaintiffs contend that the dismissal of their complaint was still incorrect when considered in the light of Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S. Ct. 414, 21 L.Ed.2d 402 (1968),[4] which allowed preinduction review in spite of § 10(b)(3) of the Military Selective Service Act of 1967, and held that a divinity student could not be punitively reclassified for returning his classification card. Plaintiffs contend that they live in constant fear of a retaliatory reclassification as occurred in *Oestereich* and that such a fear is not unrealistic since such a reclassification was visited upon Kochlacs. Further, they contend that all members of their class are similarly concerned.

■ We have no difficulty in affirming the district court's dismissal as to all plaintiffs except Kochlacs. An examination of the contentions of the other three named plaintiffs shows that none has even been threatened by his board with reclassification. In essence, these plaintiffs can only point to isolated actions by local boards (*e. g.*, Kochlacs's board) for their expressed fear that they will be reclassified in violation of the thrust of *Oestereich*. We, in effect, are asked to assume that local boards will disregard the *Oestereich* clear mandate against punitive reclassifications. We do not conceive that mere suspicion without some reasonable basis entitles a person to sue an agency of the Government to prevent that agency taking action which is in violation of the law. There must be some substance to the fear and we can find none for the three plaintiffs. We also note that the regulation under which the local board declared the registrant in *Oestereich* to be a delinquent, 32 C.F.R. § 1642.4(a), has been omitted from the most recent edition of the regulations. Plaintiffs cite Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), to support their position that fear is enough. We do not so read *Dombrowski* where the chilling or fear certainly did not border on the chimerical. In sum, we will not assume that local boards and the operative apparatus of the Selective Service System will act in blatant violation of the law as set out in *Oestereich*.

What we have said with regard to the specific cases of the three plaintiffs would *a fortiori* be applicable to those unnamed but theoretically fearing students and ministers who had supposedly repudiated jurisdiction over themselves by the Selective Service System. We find no basis for a class action in this instance.

■ As we have indicated, Kochlacs presents a more troublesome case as he allegedly suffered exactly the deprivation visited on Oestereich, *i. e.*, a punitive reclassification because of returning cards to his board. There are, however, significant factual distinctions between the cases. First, Kochlacs's local board acted after the decision in *Oestereich*. Arguably this might make the action of the board more reprehensible and unsupportable because of being in violation of the holding of the Supreme Court. But upon further analysis it would be reasonably predictable that upon appeal within the administrative framework of the System there would be a reversal. In *Oestereich*, the board was operating

---

4. The companion case to *Oestereich*, Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), upheld the constitutionality of § 10(b)(3) as a bar to preinduction judicial review in cases in which the draft board had exercised its statutory discretion in evaluating the evidence of the registrant's conscientious objector claim.

under a properly adopted regulation. This would not now be true. Even if a particular local board was not aware of the elimination of the regulation, we would not assume that the higher echelons of Selective Service would be unaware thereof.

We note that Kochlacs, consistent with his view that he should be exempt from any contact with the Selective Service System on grounds of freedom of religion, never appeared before his local board, never requested a personal appearance, and never took an administrative appeal from his reclassification as I–A. Thus, he is in the situation of the defendants in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), and McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).[5] In McKart, the Court held that the defendant in a criminal prosecution for refusing induction was not barred from defending on the ground that he was entitled to a deferment as a sole surviving son, IV–A, even though he had not taken an administrative appeal. The Court emphasized that the question was solely one of law and that the record was sufficient. In contrast, the Court in McGee held that the defendant could not raise his claim to a deferment as a student studying for the ministry (or a conscientious objector) because he had failed to ask for a personal appearance or appeal his classification.

On the surface, the present case is close to McGee since both deal with divinity students, but the distinction does exist in that in McGee the local board

had no real evidence in its files that the registrant was entitled to a 4–D. Here, Kochlacs's file had evidence of his status since the board had previously granted him a 4–D exemption, and, allegedly, the only reason the board reclassified him was that he returned his cards. We do not have to resolve this difficult question, however, since both McGee and McKart were cases involving defense to criminal prosecutions. Kochlacs, although he has refused to report for induction, has never been indicted.

It is our view that the exception to the bar on preinduction review (not habeas corpus or defense to a criminal charge) set out in Oestereich should not be applied in a case such as the present one where there is no reason to think an appeal would be fruitless and where there has been no exhaustion of the administrative remedies within the Selective Service System. Kochlacs contends that his case is exactly like Oestereich's and therefore there was blatantly lawless misconduct. But as Mr. Justice Harlan in his concurrence emphasized, Oestereich also had the element that a regulation of the Selective Service System was being challenged. Such "a challenge to the validity of the administrative procedure itself not only renders irrelevant the presumption of regularity, but also presents an issue beyond the competence of the Selective Service Boards to hear and determine. . . . To withhold pre-induction review in this case would thus deprive petitioner of his liberty without the prior opportunity to present to any competent forum—agency or court—his substantial claim that he

5. In Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), the registrant sought preinduction review of his local board's punitive reclassification of him from a student deferment. Breen appealed his reclassification but, while that appeal was pending, sought an injunction in the district court against any possible induction. The district court dismissed for want of jurisdiction, not mentioning failure to exhaust the administrative appeals

remedies. However, during the pendency of Breen's appeal to the Court of Appeals, the Selective Service Appeal Board ruled against him and upheld his reclassification. We believe that this action mooted any possible claim by the Government that Breen was barred from preinduction review for failure to exhaust his administrative remedies. In Breen, it was arguable until the decision of the Supreme Court whether or not Oestereich controlled.

was ordered inducted pursuant to an unlawful procedure. Such an interpretation of § 10(b)(3) would raise serious constitutional problems, and is not indicated by the statute's history, language or purpose." 393 U.S. at 242–244, 89 S. Ct. at 419–420. (Footnotes omitted.)

We recognize that the Court did not draw the line in this way in *Oestereich*, see Fein v. Selective Service System Local Board No. 7, 405 U.S. 365, 375, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). However, in deciding whether the rationale of *McKart* or of *McGee* controls on the issue of exhaustion, it is our opinion that it is crucial to the integrity of the System to require in cases of allegedly aberrant behavior by a local board in improperly classifying a registrant, when not based on the uniform application of a duly adopted controlling regulation as in *Oestereich,* that the Selective Service System itself be given a chance to deal with the mistake and rectify it through its appellate procedures. As the Court said in McGee v. United States, *supra*, 402 U.S. at 484, 91 S.Ct. at 1568, "After *McKart* the task for the courts, in deciding the applicability of the exhaustion doctrine to the circumstances of a particular case, is to ask 'whether allowing all similarly situated registrants to bypass [the administrative avenue in question] would seriously impair the Selective Service System's ability to perform its functions.' 395 U.S., at 197."

In the present case, we think that that question must be answered in favor of requiring exhaustion. This does not mean that such exhaustion would have to be required in a case involving habeas corpus or criminal defense. The balance is different and we do not pass on this question other than to note that the balance may lead to a different result since

the threat to the integrity of the System is substantially less in that type of case as noted by Congress when it passed § 10(b)(3) barring most preinduction review.[6]

We rest our decision on one further basis. As the Court noted in *McKart,* "[c]ertain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." 395 U.S. at 195, 89 S.Ct. at 1663. Here, we find no reason for thinking that the Appeals Board would have let this allegedly improper reclassification stand if Kochlacs had shown that his case was actually identical to *Oestereich*. Thus, when we read the considerations of efficiency *in pari materia* with those of exhaustion and the congressional disfavor of preinduction review, we believe that exhaustion is also mandated in the present case. Once again, the balance is substantially different in a case where § 10(b)(3) is not concerned. Further, the balance might be different if the case were like Oestereich's, where the local board *and* the appeals board were operating under a presumably valid regulation and thus the challenge was not to aberrant board behavior but to the process itself.

Finally, we sense no compelling interest in granting access to the courts in situations where the relief sought is readily available through more expeditious and less expensive administrative procedures, particularly where there is a basis for the thought that the courts are being used, *inter alia*, because of their greater exposure to the news media as a vehicle to publicize views, no matter how sincerely those views may be held.

6. In Fein v. Selective Service System Local Board No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), the Government virtually conceded that Fein had a valid defense if he refused induction, yet it op-

posed vigorously allowing that defense to be raised by preinduction review. The Court accepted this distinction and denied such review. 405 U.S. at 380, 92 S.Ct. 1062.

For the reasons set forth hereinbefore, the judgment of dismissal is affirmed.

Affirmed.

FAIRCHILD, Circuit Judge (concurring in part, dissenting in part).

Respectfully, I would reverse the dismissal as to Kochlacs, and affirm in all other respects.