**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clifford GRIER, Defendant-Appellant.**

**No. 74–2781.**

United States Court of Appeals,
Fifth Circuit.

March 28, 1975.

John R. Myer, Atlanta, Ga., for defendant-appellant.

John L. Briggs, U. S. Atty., Howard T. Snyder, Ernst D. Mueller, John Daley, Jr., Asst. U. S. Attys., Jacksonville, Fla., for plaintiff-appellee.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal in a selective service case from a conviction, in a trial before the court, without a jury, for the defendant's failing to submit to induction. 50 U.S.C. App. § 462. Because of procedural defects in the local board's handling of the reclassification of the defendant from II–S (student deferment) to I–A (available for induction), we reverse his conviction, and remand the case to the district court with instruction to dismiss the indictment.

Clifford Grier registered with Local Board 163 in Sylvester, Worth County, Georgia. The local board classified him II–S when he enrolled in Morehouse College sent SSS Form 109 to the local board, stating that Grier was a full-time student making satisfactory progress toward graduation in June 1971. In May 1970 he began working 40 hours a week at National Biscuit Company, while remaining a full-time student. In November 1970 Morehouse College sent another SSS Form 109, again certifying that Grier was a full-time student making satisfactory progress towards graduation. The projected date of his graduation, however, was moved back to June 1972. On November 16, 1970, the local board reclassified Grier I–A, giving no reasons, but apparently because of his having fallen behind in his studies. The next day the board sent Grier his notice of reclassification (SSS Form 110), along

with SSS Form 217, Advice of Right to Personal Appearance and Appeal.[1] Twenty days later, on December 7, 1970, Grier sent a letter to the board, requesting an appeal and an "appearance before the appeal board with jurisdiction over the Atlanta area".[2] The board never answered Grier's letter. Instead it treated his letter only as a request for an appeal to the State Appeal Board. Although Grier had a right to a personal appearance before his local board in Sylvester, 32 C.F.R. § 1624, he had no such right before the State Appeal Board. 32 C.F.R. § 1626. The appeal board voted unanimously to affirm the classification, apparently without considering Grier's muddled understanding of his rights.[3]

Grier was married on January 23, 1971; he informed the local board of his changed marital status in February 1971; in June of that year his child was born. Grier received a notice and order to report for induction on March 24, 1971. He reported the next day, but refused to submit to induction. He was indicted on September 15, 1971 and was arraigned on March 1, 1972. Counsel was appointed to represent him. He entered a plea of not guilty. Later, Grier changed his plea to *nolo contendere,* and on October 16, 1972, he was sentenced to the custody of the Attorney General for 28 months. He surrendered and began serving the sentence.

On October 26, 1972, Grier, represented by a new attorney, filed a "Motion for a New Trial" asserting the ineffectiveness of his court-appointed counsel. On October 27, 1972, a hearing was held on this motion. At that hearing, Grier was allowed to file a motion to set aside the conviction, vacate the sentence, withdraw his plea, and request a new trial. The court treated this motion as a petition for writ of habeas corpus "in the light most beneficial to the defendant." Under Fed.R.Crim.P. 32(d) the district court set aside the conviction and permitted Grier to withdraw his plea of *nolo contendere.* The court also ordered Grier's release from custody.

A new trial was held on May 11, 1973. He was again found guilty in a non-jury trial, and sentenced this time to eighteen months in the custody of the Attorney General, with credit for the three and a

---

1. The form is entitled Advice of Right to Personal Appearance and Appeal. It reads as follows:

    Enclosed is your Notice of Classification (SSS Form 110). Your right to ask for a personal appearance before your local board and your right to ask for an appeal to the State Appeal Board is prescribed on the reverse side of the Notice of Classification. Your request for either a personal appearance before your local board or an appeal to the State Appeal Board must be made in writing to this local board within 30 days from the date of mailing as shown above and as shown on the SSS Form 110. Your local board has available a Government Appeal Agent to advise you concerning your right to a personal appearance, your right of appeal, or any other procedural right or process. The Appeal Agent or the Associate Government Appeal Agent will give you advice only on Selective Service matters at no charge.

    If you should desire a meeting with him, this local board office will arrange a time and place for such meeting upon request.

     (signed) E.B. Almand
     Member, Executive Secretary,
     or Clerk of local board.

2. The letter read as follows:

    I recently received a notice of reclassification to I–A. I am writing this letter in order to ask for an appeal of the re-classification.

    I am, at present, a student at Morehouse College and also an employee of the National Biscuit Company, both in Atlanta, Georgia. Therefore, I would like, if possible, for my Notice of Appeal to be submitted to the appeal board having jurisdiction over this area. If an appearance before the appeal board, with jurisdiction over the Atlanta area, could be arranged, it would be greatly appreciated.

    Please notify me of your decision concerning my request of appeal, and possibly appearance before an appeal board at the following address:
     Clifford Grier
     66 Taliaferra Street, N.W.
     Atlanta, Georgia 30314
    Thank you.

3. Although the Act provides for de novo review, the appeals board considered 109 appeals in three hours (with the assistance of summaries prepared by secretaries), an average of one minute and thirty-nine seconds per appeal.

half months previously served. The court allowed Grier to continue on bond pending this appeal.

## I

The issues in this case arise out of Section 6(h)(1) of the Selective Service Act of 1967, 50 U.S.C. App. § 456(h)(1), providing for student deferments.[4] The President promulgated 32 C.F.R. § 1622.-25(c) under that Section of the Act providing for a "parity requirement"; that is, if a student each year completes twenty-five percent of his work toward a four-year degree he shall be "[*deemed* to be] 'satisfactorily pursuing a full time course of study instruction' . . . ."[5]

Grier argues (1) that this regulation is invalid because it adds a factor not authorized by the Act and therefore his classification had no basis in fact; (2) that he was denied the important administrative and due process right to a hearing by the local board's failure to correct his misunderstanding of his rights; and (3) that the appeal board denied him due process of law and his statutory right to de novo review by its summary proceeding.

The trial court held that the certificate from Morehouse College that he had fallen behind a year provided a basis in fact for his classification—applying "objective criteria" of the Regulations.[6] The district court ruled that

"The text of the letter clearly indicates that defendant was seeking an appeal of his reclassification and a personal appearance before the Appeal Board. He had been advised by the SSS Form 217 on November 17, 1970 of the alternative of requesting a personal appearance before the local board or an appeal. There is nothing in defendant's December 7 letter that would clearly suggest a misunderstanding of these alternatives. In a case such as this the failure of a registrant to request a local board appearance might well be expected. For here the registrant had clearly failed to meet the objective criteria necessary to qualify for a student deferment. This is not a conscientous objector case, where the registrant's sincerity and good faith are an issue and the local board might expect him to urge his position in person."

---

4.  [T]he President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs. 50 U.S.C. App. § 456(h)(1).

5.  A student shall be deemed to be "satisfactorily pursuing a full-time course of instruction" when during his academic year, he has earned, as a minimum, credits toward his degree which, when added to any credits earned during prior academic years, represent a proportion of the total number required to earn his degree at least equal to the proportion which the number of academic years completed bears to the normal number of years established by the school to obtain such a de-

gree. For example, *a student pursuing a four-year course should have earned 25% of the credits required for his baccalaureate degree at the end of his first academic year, 50% at the end of his second academic year, and 75% at the end of his third academic year.* 32 C.F.R. § 1622.25(c) [emphasis added].

6.  The standard of judicial review of Selective Service Board classifications is one of the narrowest in the law.

    The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of the jurisdiction of the local board is reached only if there is *no basis in fact* for the classification which it gave the registrant.

    Estep v. United States, 1946, 327 U.S. 114, 122–23, 66 S.Ct. 423, 427, 90 L.Ed. 567 (emphasis added). Employing this extremely limited standard, the district court ruled that a basis in fact existed for *Grier's classification.* However, this case turns on defects in the local board's procedures, not the propriety of Grier's classification.

The court also concluded that evidence that the Appeal Board accorded de novo review to one hundred and nine cases in three hours was "an insufficient showing to rebut the presumption of regularity which attends such government functions . . . .".

■ Initially, we note that selective service registrants are accorded certain statutory and administrative rights. This Court has held that "all procedural requirements [must] be strictly and faithfully followed" for a draft evasion conviction to be upheld. Olvera v. United States, 5 Cir., 1955, 223 F.2d 880, 882. Strict judicial supervision of the Selective Service System's procedures is necessary, because the Act and regulations come perilously close to the minimum requirements of due process. *See* Note, Judicial Review of Selective Service Classifications, 56 Va.L.Rev. 1288, 1312–13 (1973).

## II

■ In Breen v. Selective Service Local Board No. 16, 1970, 396 U.S. 460, 464–65, 90 S.Ct. 661, 24 L.Ed.2d 653 the Supreme Court pointed out that "there is nothing of the language of the Act itself that indicates a congressional desire to allow the President to add to or subtract from the factors specified in this statute for determining when students would be deferred." *Breen* invalidated a regulation, promulgated under Section 6(h)(1) of the Act, providing for punitive reclassification of deferred students. Grier asserts that the President has gone beyond the authority of Section 6(h)(1) by specifying a mechanical formula for the deferment of "persons satisfactorily pursuing a full-time course of instruction". We agree with the view of the United States Attorney and that of the Court of Appeals for the Fourth Circuit that the regulation is valid because it is merely a working definition, and that "a convenient administrative presumption is established" by Section 1622.25(c). Coleman v. Tolson, 4th Cir., 1970, 435 F.2d 1062.

The Court in Coleman v. Tolson held that a student deferment depends on the facts in each case.[7] The United States asserts that in Grier's case the local board did not apply the regulation in the inflexible manner condemned in Coleman v. Tolson. We cannot say with certainty that it did; a basis in fact may well exist for Grier's classification. Nonetheless, it is precisely because the determination of a student deferment must be made on a case-by-case basis that a hearing is so important. All registrants have the absolute right to a personal appearance. The Regulations state that "Every registrant after his classification is determined by the local board . . . shall have an opportunity to appear in person before the local board". 32 C.F.R. § 1624.1(a). At this hearing, "the registrant may present evidence, including witnesses, may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification". *Id.* § 1624.4(b). Grier never had this opportunity.

## III

■ We have frequently stated that a personal appearance before the draft board is an important procedural right; its denial will invalidate a conviction under 50 U.S.C. App. § 462. United States v. Taylor, 5th Cir., 1974, 490 F.2d 442, 445; United States v. Bagley, 5th Cir., 1970, 436 F.2d 55, 57. *See* Mulloy v.

---

7. Coleman v. Tolson resembles this case. There a student had fallen seven credits behind in his progress, and was reclassified I–A even though the school certified that he was making satisfactory progress as a full-time student. His date of graduation, however, unlike Grier's remained the same. The court held that student status is a question of fact in each case. Because the board applied a mechanical formula instead of making a finding of fact, the court held that the student's reclassification was without a basis in fact.

United States, 1970, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362. The right to an appeal does not cure local board errors in denying a personal appearance. Mugaro v. Cassidy, 5th Cir., 1970, 426 F.2d 137, 142.

The government argues that Grier failed to request an appearance before the local board. But it is clear that Grier requested some personal appearance. The questions, then, are whether Grier was confused as to his rights, whether that confusion was reasonable in the circumstances, and, if so, whether the local board had a duty to correct Grier's misunderstanding.

A. We read Grier's letter as showing that he misunderstood his rights. He asked for a personal appearance before the appeal board "having jurisdiction over the Atlanta area". He was not then entitled to appear personally before the appeal board. But he did have the right to appear before the local board, while still retaining the right thereafter to appeal the local board's decision. The local board's action in referring his case to the State Appeal Board had the effect of depriving him of an appearance before his local board. Although Grier expressly requested a response to his letter, the next time he heard from Selective Service was when he was informed that he was drafted.

▆▆▆ We consider that Grier's confusion was not unreasonable in the circumstances. SSS Form 217 reads in bold print at the top, "ADVICE OF RIGHT TO PERSONAL APPEARANCE AND APPEAL". Nowhere does the notice state that he may not appear personally before the Appeal Board; it merely states in the affirmative that he may appear personally before the local board. It is significant that a personal appear-

ance is now permitted before the State Appeal Board. 32 C.F.R. § 1626.4 (1974).

The letter is also ambiguous in that Grier apparently was asking that he be heard before the board in Atlanta, rather than the board in Sylvester, because of his attending college at Morehouse and his being employed by the National Biscuit Company, both in Atlanta. What he seemed to request was an appearance before an Atlanta board.[8] Thus there was confusion not only as to his right to a hearing and appeal, but as to the proper location for that hearing.

We hold that the letter is ambiguous on its face and showed that Grier was manifestly bewildered as to his rights. Considering the form of notice, the regulation, and the facts peculiar to this case, it was reasonable for the confusion to have occurred.

B. We have held that when a local board gives erroneous and misleading information to a registrant a subsequent conviction cannot stand. Powers v. Powers, 5th Cir., 1968, 400 F.2d 438; See United States v. Cordova, 10th Cir., 1972, 454 F.2d 763. We agree with the Tenth Circuit that "the board has an affirmative duty not to mislead and to give correct information and advice. Cordova at 765.

In United States v. Turner, 3rd Cir., 1970, 421 F.2d 1251, 1255, the Court said, "when a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be, to obtain clarification from him." We also agree with the reasoning in United States v. Timmins, 9th Cir., 1972, 464 F.2d 385, 387. The term "misleading information" is "also meant to refer to circumstances where the local board, knowing full well that a regis-

---

8. The government argues that Grier deliberately by-passed the assistance of a Government Appeals Agent—the mechanism provided by Selective Service designed to assist him. SSS Form 217 notified Grier of the availability of the Appeals Agent *at the local board* in Sylvester. But Grier made it clear in his letter that a journey to Sylvester would have been a great hardship; he expressly requested transfer of his case to Atlanta. In oral argument, the government admitted that no such transfer was provided for in the Regulations. We do not think that Grier's reluctance to leave school and full-time work to travel to Sylvester for a conference with the Appeals Agent can be considered unreasonable, or some kind of waiver of his rights with respect to the local board.

trant holds an erroneous impression of his rights or obligations in the selective service system, nevertheless fails to make any effort to correct the registrant's error or assist him in any way. The classification of registrants is not an adversary proceeding between the local board and the registrant. . . . The registrant is not an antagonist, but rather is a young man dealing with his own government without the aid of counsel and in an area of the law which can be extremely technical. He must be able to rely upon the local board to deal with him fairly and to offer him assistance when necessary." We hold that the local board breached its affirmative obligation to assist Grier, whose letter demonstrated the registrant's inability to advance his claim and maintain his rights.

 C. The government distinguishes cases stressing the need for personal appearance by stating that they involve the claims of conscientious objectors whose sincerity must be assessed, an assessment better reached with a personal hearing than without one. We are not persuaded that this principle applies only to conscientous objector cases. Grier was substantially prejudiced by the denial of a hearing before the local board. He might have convinced the local board that he was still entitled to a student deferment because he planned to make up lost credit, perhaps by summer school, or by an accelerated program of studies. He might have been able to show the board that he was entitled to a hardship or dependence deferment in light of his marriage and the birth of his child. In view of the perfunctory treatment of his appeal to the State Appeal Board, a personal plea to his local board offered the more promising approach. Grier's continuing to attend Morehouse College while working to support his wife and child show a serious, earnest young man entitled to full consideration. The local board should have answered his letter and informed him of his right to appear in person only in Sylvester, Georgia.

IV

Because Grier was deprived of his statutory and administrative rights by the local board, we need not consider whether the appeal board also violated his right to de novo review.

 This decision should not be read broadly. The local board does not have the obligation to answer a registrant's letter in every circumstance, nor must it grant a hearing, unless the letter, reasonably construed, requests a hearing. We merely hold that when a registrant's letter evidences obvious confusion about his right to a hearing, the board has the affirmative duty to respond in such a way as to clear up the registrant's misunderstanding.

We reverse Grier's conviction and remand the case to the district court with instructions to dismiss the indictment.

Reversed and remanded.